Douglas Moomey
205 E 4600 S # 5
Murray, Utah [84107]
Mobile: 801-857-8124
Dmoomey@protonmail.com

Date of Filing: _____

Date of Summons _____

FILED US District Court-UT
OCT 01 '21 AM 10:30

# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH
## 351 S. West Temple, Salt Lake City, Utah 84101

| | |
|---|---|
| Douglas Moomey,<br>In Proper Person,<br>Damaged, Aggrieved,<br><br>                    Plaintiff,<br><br>v.<br><br>Express Messenger Systems Inc, dba OnTrac, OnTrac Logistics Inc., including Executive Officers Robert E. Humphrey Jr., Stuart L. Agranoff, and Thomas Fischer, Sara Westfall, HR Manager, Mary Kay Handley, HR Director,  Alex Velasquez, Vendor Relations, Brad Flores, OnTrac Facility Manager, sued in their individual and official capacity, and other unknown persons at this time Does 1-5, et al.<br><br>                    Defendants. | **Plaintiff's Verified Complaint**<br><br>Case: 2:21-cv-00575<br>Assigned To : Kimball, Dale A.<br>Assign. Date : 10/1/2021<br>Description: Moomey v Express Messenger Systems et al<br><br><br><br>Jury Trial Respectfully Demanded |

## TABLE OF CONTENTS

1) JURISDICTION AND VENUE……………….…………………..........…………… 4

2) PARTIES……………………………………………………….…………………...…5

3) PLAINTIFF'S VERIFIED COMPLAINT…………………….....……………..…..…6

   INTRODUCTION…………………………………………..…………………….6

   A. STATEMENT OF FACTS…....……………………………..…………………6

   FEDERAL QUESTIONS………………………………………...…………….…9

4) B. BACKGROUND………………………………………...……………….…………10

   PLAINTIFF'S LEGAL OBLIGATIONS………………….…………..…..……...10

5) C. DISABILITY DISCRIMINATION AT THE  ONTRAC FACILITY………….......15

6) JUDICIAL NOTICE OF UPPER COURT RULINGS………………………………18

7) D. JUDICIAL NOTICE TO THE COURT: MEMORANDUM OF POINTS AND
   AUTHORITIES, CONGRESSIONAL FINDINGS …....……………….…..………......…..21

8) E. MASK DOCUMENTS AND ARTICLES……………………………………..…..23

9) F. ONTRAC IS A PUBLIC ACCOMMODATION…………………….……………..24

10) G. CAUSES OF  ACTION………………………………………………………25

11) H. CONCLUSION…………………………………………………………….…..39

12) I. PRAYER FOR RELIEF……………………………...…………………….................41

13) DECLARATION IN SUPPORT………………………………………….………...44

14) CERTIFICATE OF SERVICE.………………………………….……………....45

## EXHIBITS

Exhibit A) ....................Sara Westfall Is Authorized to Receive Correspondence For OnTrac

Exhibit B) ....................Plaintiffs Medical Record From The University of Utah - PRIVATE

Exhibit C) .......................Plaintiff Provides Critical Essential Services on Behalf of OnTrac

Exhibit D) ..................................The Americans with Disabilities Act Title II and Title III

Exhibit E) ......................Plaintiffs Charge of Discrimination EEOC & Letter of Right to Sue

Exhibit F) ........Documents and Articles about the Mask, UEAs, Unsafe, Unhealthy, Ineffective

Exhibit G) .......................Dr. Anthony Fauci on Masks and Emails Showing Misinformation

Exhibit H) ..................Legal Notices and Letters of Intent from Plaintiff to OnTrac Corporate

Exhibit I) ...................Surgical Masks Only Authorized Under Emergency Use Authorization

Exhibit J) ...........................Utah Governor Gary Herbert Executive Order With Exemptions

Exhibit K) .......................Utah Department of Health Public Health Order With Exemptions

Exhibit L) .....................CDC, OSHA, and AST Mask Guidelines Showing Legal Exemptions

Exhibit M) .........................Video Transcript of Defendant Brad Flores Confronting Plaintiff

Exhibit N) .....................Pictures of Individuals Not Wearing a Mask At The OnTrac Facility

Exhibit O) ..................Text Messages Between Plaintiff and Vanessa Showing OnTrac Action

Exhibit P) ...................OnTrac is Legally a Public Accommodation and Host/Joint Employer

Exhibit Q) .........Plaintiff Check Stub From December Of 2020 Showing Yearly Compensation

Exhibit R) ...................Pictures Taken of The OnTrac Policy on The Outside Wall of Facility

Exhibit S) .................There Is No Emergency, There Is No Pandemic, There Is No Authority

Exhibit T) ...............................................…Lab Alert: CDC Admits PCR Test Is Useless

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. § 1331 because this case arises under the Constitution and Laws of the United States, and 28 U.S.C. § 1343(a)(3) because this civil action is to secure equitable relief for violation of Plaintiffs Civil Rights;   This Court is proper for Title III of the Americans with Disabilities Act ("ADA" or "Act") under 42 U.S.C. §§ 12101-12181, et seq. There is an actual controversy between Plaintiff and the Defendants named herein, and this court is authorized to award the requested relief under The Declaratory Judgement Act, 28 U.S.C. §§ 2201-2202 and by its general legal and equitable powers.

2. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs claims occurred in this judicial district.

3. Plaintiff has standing to sue Defendants because OnTrac employees discriminated against Plaintiff, violated Plaintiffs Civil Rights, and violated the Americans with Disabilities Act, et al. Plaintiff satisfies the "case-or-controversy" requirement of Article III of the Constitution and has standing to sue because Plaintiff suffered an "injury in fact" that is (a) concrete and particularized (b) actual or imminent, not conjectural or hypothetical; (c) the injury is fairly traceable to the challenged action of the Defendants; and (d) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Sproule v. United States FDA*, 2018 U.S. Dist. LEXIS 62507 at 7 (S.D.Fl. 2018) (quoting *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.,* 647 F.3d 1296, 1302 (11th Cir. 2011)).

4. A Court Order declaring OnTrac discriminated against Plaintiff and relief in the amount of Triple Damages of yearly compensation is Plaintiff's claim upon which relief can be granted. Plaintiff would also Motion the Court to initiate Rule 65 Injunctive or Declaratory Relief

against further actions alleged in this Complaint, and enjoin OnTrac and its employees from further unlawful activity.

## **PARTIES**

5.  Plaintiff Douglas Moomey ("Plaintiff") is a Man, and lives in the City of Murray, Utah, located in this district court's jurisdiction. [DOUGLAS MOOMEY is a Fourteenth Amendment U.S. citizen and is a resident in this Court's jurisdiction.]

6.  Upon information and belief, Defendant Express Messenger Systems Inc. dba OnTrac (From hereon "OnTrac") is a privately held, business entity that effects and operates in commerce, a public accommodation, a common carrier, that owns/leases and/or operates a commercial facility in West Valley City, Utah, located at 1854 South 5350 West, Salt Lake City, Utah 84104, also located within this Court's jurisdiction. The discrimination and Civil Rights violation against the Plaintiff occurred at this location on April 8th, 2021.

7.  OnTrac is known to operate several facilities in the western states and its corporate office is at 2501 S. Price Rd. Suite 201, Chandler, AZ 85286. Upon information and belief, all Defendants, except Brad Flores, work out of the corporate office in Arizona.

8.  Upon information and belief, Defendants Robert E. Humphrey Jr., Stuart L. Agranoff, and Thomas Fischer are Executive Officers of OnTrac and legally responsible for their employees actions. The same is alleged against Mary Kay Handley, Director of Human Resources, who was directly or indirectly involved with Defendants Sara Westfall and Brad Flores' decision to discriminate against Plaintiff. (Please See **A. Statement Of Facts** Below)

9.  Defendant Sara Westfall, HR, has affirmed, (Please See Exhibit A) that she is authorized to "receive all communications pertaining to this charge." Until such time, all correspondence from the Plaintiff will go to her E-mail at swestfall@ontrac.com. (Exhibit A) Defendant

Flores will initially be served at the West Valley address. This Court will receive copies of all correspondence and Certificates of Service pursuant to Rule 4. Until Plaintiff receives notice from council, Plaintiff has no other serviceable address.

10. Plaintiff is informed and believes and thereon alleges that each of the Defendants are legally responsible in some manner for the acts, conduct, decisions, actions, omissions, and events referred to herein, causing irreparable harm to Plaintiff, as alleged herein.

11. Plaintiff is informed and believes and thereon alleges that each Defendant acted at all times relevant herein as the agent, representative, servant, officer, employee, supervisor, manager, executive, co-venturer, subsidiary, and/or corporate agent of OnTrac.

12. Plaintiff further alleges that the acts, decisions or omissions of any agent or employee of OnTrac was done within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, joint venture, subsidiary, and/or corporate-representative relationship.

13. Plaintiff will seek leave to amend this Complaint to allege (Does 1-5) their true names and capacities when the same has been ascertained. In this Instant Case, focus is on the Defendants personally involved in the violation, as set forth herein.

### PLAINTIFFS VERIFIED COMPLAINT
### INTRODUCTION
### A. STATEMENT OF FACTS

14. Plaintiff has worked for OnTrac approximately 3 years. (Please See Exhibit C) Plaintiff has never been disciplined and has a clean record at the West Valley facility. Plaintiff, at no time, was ever a direct threat to anyone, including during the COVID-19 outbreak, and at no time has Plaintiff ever posed a direct risk to anyone at OnTrac or OnTrac's business, customers, vendors, clients, or agents. Plaintiff contacted Eragon Express, a Staffing Agency, and started

working for OnTrac, and Eragon is essentially Plaintiffs payroll department. Plaintiff works at the OnTrac facility, has an ID badge that says OnTrac, uniforms that say OnTrac, a magnetic sign on the side of Plaintiffs Van that says OnTrac, and Plaintiff uses an OnTrac delivery APP on Plaintiffs phone. Plaintiff picks up and delivers OnTrac freight, and deals with OnTrac customers. At no time does any customer, company, business, or resident believe Plaintiff works for Eragon Express. If you pull up in a Brown Truck, you work for UPS. If you deliver the U.S. Mail, you work for the Post Office. If you pull up in a White Van, you work for OnTrac.

15. Plaintiffs medical condition/disability was known to people that work at the facility in West Valley. (Please See Exhibit B) Plaintiffs disability did not stop Plaintiff from working, it only slowed Plaintiff down a little, especially when large heavy freight, such as tires, generators, and furniture were on Plaintiffs route. Plaintiff has a compromised immune system which is considered a disability. "Respiratory impairments arising from...cancer and autoimmune diseases generally, most certainly constitute disabilities within the meaning of the ADA." (*Bragdon v. Abbott*, 524 U.S. 624, 633-637 (1993)  The U.S. Supreme Court In *Bragdon* confirms; "that 'HIV' infection is a disability within the meaning of the ADA, even where the individual was asymptomatic at the time," they also held; "...a representative list of disorders and conditions constituting physical impairments, [includes] ... HIV,"; (Please See 45 C.F.R. Pt. 84, App. A.)

16. A robust body of case law holds that "the Act" (ADA) must be broadly construed in application. (Please See Exhibit D) For example, in *Steger v. Franco, Inc.* 228 F.3d 889 (8th Cir. 2000) the court held: "the ADA is a remedial statute, and should be broadly construed to effectuate its purpose." (*Id.*, at 894.) Similarly, in *Carolyn v. Orange Park Community Assn.*

(2009) 177 Cal.App.4th 1090, 1098, the court held: "The ADA's "legislative history indicates [the public accommodation categories] it 'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled [citing *PGA Tour, Inc. v. Martin* 532 U.S. 661, 676-677 (2001)]." Finally, as set forth in *De La Rosa v. Lewis Foods of 42nd Street, LLC*, 124 F.Supp.3d 290, 294-295 (S.D. N.Y. 2015): "When there is an ambiguity about the ADA's scope, its 'broad remedial purpose' provides a compelling justification for an *inclusive* interpretation." 42 U.S.C. § 12182(b)(1)(A)(ii) states: "It shall be discriminatory to afford an individual ..., on the basis of a disability or disabilities of such individual ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." In *Di Lella v. University of Dist. of Columbia David A. Clarke School of Law*, 570 F. Supp. 2d 1, 8 (D.D.C. 2008), the court held that: "It is not sufficient to merely provide a qualified individual with *any* accommodation; the accommodation needs to address the limitation arising from the individual's disability." In addition, the 9th Circuit in *Wong v. Regents of University of California* 192 F.3d 807 (9th Cir. 1999)("*Wong*"), held as follows; regarding the affirmative duty upon operators of public accommodations, to identify and provide those modifications to its services that are reasonably necessary to afford the full and equal enjoyment of them by disabled persons: "'mere speculation that a suggested accommodation is not feasible' falls short of the "reasonable accommodation" requirement; the Act creates a duty to gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary to enable [the individual to meet the standards in question]." (*Wong, supra.*, 192 F.3d at 818, citing *Buckingham v. United States*, 998 F.2d 735, 740 (9th

Cir.1993) quoting *Mantolete v. Bolger*, 767 F.2d 1416, 1423 (9th Cir.1985).) Finally, in *Anderson v. General Dynamics*, 589 F.2d 397, 401 (9th Cir. 1978), the 9th Circuit held: "The burden was upon the [defendants], not [the plaintiff], to undertake initial steps toward accommodation. They cannot excuse their failure to accommodate by pointing to deficiencies, if any there were, in [defendant]'s suggested accommodation". The ADA is seen as Exhibit D and is now entered as part of this Complaint.

17. After communicating with The Utah Labor Commission (UALD No. C1-0280) and filing a charge against OnTrac for discrimination, (Please See Exhibit E) Plaintiff has come to the conclusion that OnTrac is NOT a Private Club, and is not exempt from the ADA. The ADA is not all encompassing, nor is it a complete list of every type of business, but the ADA gives the Court jurisdiction to address these most important questions. As of September 17th, 2021, Plaintiff has now received Notice of Right to Sue from EEOC and has attached this Letter as part of Exhibit E.

18. **FEDERAL QUESTIONS:** Is OnTrac a public accommodation within the language of the ADA? Is the facility OnTrac operates, a commercial facility, within the meaning of the Act? Does OnTrac affect commerce, and if they do, do they fall within the Act? Does OnTrac advertise and provide transportation services to the public, and if they do, do they fall within the meaning of the Act? Is OnTrac compensated with Federal Funds, and if they are, are they considered a public entity, quasi-governmental agency? Is OnTrac considered a Host/Joint Employer of the Plaintiff? Plaintiff believes that OnTrac does fall within the language and meaning of the ADA. (Exhibit D) Plaintiff dismisses OnTrac's claim that they are a private club, the only exemption found in the ADA.

**B. <u>BACKGROUND</u>**
<u>**PLAINTIFF MET THE LEGAL OBLIGATION TO PROVIDE ONTRAC**</u>
<u>**WITH NOTICE OF DISCRIMINATION**</u>

**19.** Plaintiff has a duty to produce and provide evidence to OnTrac of any violations or unsafe practices Plaintiff sees "in the workplace" that could be detrimental to the safety and well-being of the Plaintiff and/or Plaintiffs co-workers. Plaintiff sent documents to OnTrac that do not pertain to this Complaint, those articles were about the PCR test, CDC corruption, the real numbers in the hospitals, and while important, are not the reason for this Complaint. If the Court would like a complete copy of all documents sent to OnTrac, Plaintiff will provide them upon request. For now, only the relevant "mask" documents have been entered as Exhibits. Plaintiff will add Exhibit S to show that there was no emergency and no pandemic to make the point about operating under color of law, and Exhibit T showing the CDC has just admitted the PCR test is being discontinued because it doesn't work. Plaintiff noticed OnTrac of this fact, and all other facts asserted in this Complaint. Plaintiff had a duty to contact OnTrac and tell them they were discriminating, and OnTrac had a duty to respond.

**20.** After doing extensive research on "the Mask", and reading hundreds of pages of medical journals, articles, and research papers, Plaintiff felt compelled to share Plaintiffs findings with OnTrac. (Please see Exhibit F) Plaintiffs findings made it very clear, Masks do not provide protection from respiratory viruses or COVID-19. In Fact, Masks are dirty, unhealthy, unsafe, and ineffective. (Exhibit F) Dr. Anthony Fauci stated in March of 2020: "Right now in the United States, people should not be walking around with masks... There's no reason to be walking around with a mask." https://youtu.be/HpHsmZSHBvc. (Please See Exhibit G) Additionally, on February 5, 2020, A FOIA request reveals an Email between Sylvia Burwell and Dr. Fauci where he admits "Masks are really for infected people...I do

not recommend that you wear a mask." (Exhibit G) Experts know that masks do not protect you from viruses. It is well documented in hundreds of medical trials, that masks do not provide protection from COVID-19 and wearing a mask is actually harmful to your health. If Plaintiff finds and shares these articles with OnTrac and then OnTrac intentionally enforces a policy that is based on lies, appearing to be "safe" and "effective", and where it "appears" they have authority to demand everyone MUST wear a mask, then OnTrac is enforcing an illegal, colorable, unhealthy, discriminatory, unsafe policy. If OnTrac had followed federal and state guidelines and allowed exemptions, modifications and/or accommodations for the disabled, we would not be here today.

21. Plaintiff exhausted the Administrative Process and made a reasonable attempt at showing OnTrac agents what Plaintiff had discovered in Letters to corporate. Plaintiff has highlighted for the Court the important language in Exhibit H and adds them in their entirety to this Complaint. Plaintiff would ask the Court to read Exhibit F to confirm Plaintiffs assertions that OnTrac received these documents on three different occasions. Plaintiff sent multiple notices by Mail, (Exhibit H) and one by Certified Mail. (Exhibit H) OnTrac ignored lawful notices and has no defense.

### 22. A COMPLETE BREAKDOWN OF EXHIBIT H FOR THE COURT.

**Page A: On/About October 2020,** Plaintiff sent a short one page letter to start correspondence and address concerns. No Response. **Pages 1-8, On January 2nd, 2021.** A Legal Notice and Letter of Intent was sent to Governor Spencer Cox (Pages 1-2) and OnTrac corporate office (Pages 3-8). Plaintiff unexpectedly merged parts of these letters together and hastily sent them out. In Plaintiffs rush to address both government and corporate, Plaintiffs concerns were jumbled together. After Plaintiff catches the mistake, Plaintiff sends another

corrected copy. **Pages 9-14**, **On January 12th, 2021,** Plaintiff sent the corrected letter with documents to OnTrac showing how any reasonable person can see that the mask is unhealthy, unsafe, and medically, there is no evidence that a mask prevents the spread of COVID-19. **Pages 15-19, On January 30th, 2021,** A third letter was sent with more documents. No response from the Defendants. **Pages 20-37 On February 30th, 2021.** After a month, Plaintiff started looking into a legal remedy and it was suggested to Plaintiff to mail the next letter Certified Mail to secure an admissible paper trail. In these Letters, Plaintiff asked OnTrac on multiple occasions to "amend" their policy and follow the law. OnTrac was asked and noticed in January and February of 2021 to stop discriminating against Plaintiff. OnTrac refused, ignored a lawful notice, and continued to discriminate. Plaintiff did not tell OnTrac to get rid of, or stop, their mask policy, Plaintiff only asked for an accommodation. Plaintiff has proof of Certified Mailing attached to this Exhibit as **Page 32A-32B.** (Post Office Confirmation of Delivery)

23. Plaintiff also noticed OnTrac in these letters that face masks were EUA approved only. Emergency Use Authorization means it is experimental and Plaintiff must be given 1.) Informed Consent 2.) the ability to accept or reject wearing an experimental medical device. A surgical mask is a EUA medical device, and OnTrac employees do not have the authority to demand use without informed consent. Plaintiff also asserts masks are ONLY authorized under emergency use, and legally, no one can be forced to wear them. (Please See Exhibit I) (Personal Protective Equipment EUAs/ Umbrella EUA for Surgical Masks August 5th, 2020.)

    www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-use authorizations-medical-devices/personal-protective-equipment-euas#appendixasurgicalmasks

24. **On February 27th, 2021**, a Third and Final Copy of Plaintiffs Legal Notice and Letter of Intent was mailed to OnTrac corporate by Certified Mail 7019 1120 0001 4062 7478. (Please

See Exhibit H, Pages 20-37) OnTrac was legally noticed and has no defense. They willfully, intentionally, knowingly, violated The Americans with Disabilities Act and State Laws, discriminated against the Plaintiff, and provided no relief from their illegal, tyrannical, overreaching, unyielding, oppressive, no-exception, mask policy.

25. Plaintiff has medical and mental conditions that are considered disabilities and governmental authorities have provided exemptions in both the Executive Order by Gary Herbert (Exhibit J) and Utah Public Health Orders. (Exhibit K) At all times relevant to this case, they have been in place, or updated, since the beginning of the COVID-19 outbreak. CDC guidelines also provide for the same exemptions, (Exhibit L) which OnTrac failed to follow.

26. In addition to Plaintiffs compromised immune system, Plaintiff has smoked cigarettes for 30 years and now "vapes", which causes breathing issues. Plaintiff now incorporates Exhibit B into this Complaint as if fully set forth herein. Please see the highlighted parts of Plaintiffs Medical Record to confirm disability. (Exhibit B)

27. Wearing a mask on Plaintiffs face obstructs Plaintiffs breathing, and causes Plaintiff to have life threatening respiratory problems. Plaintiffs respiratory impairments substantially limit one or more major life activities and/or major bodily functions, including but not limited to performing manual tasks, walking, speaking, breathing, working, concentrating, and communicating.

28. Plaintiff had these disabilities at all times relevant to this action, including on or about April 8th, 2021, and for the entire time Plaintiff has worked at the OnTrac facility (3 years) as described herein and below.

29. Plaintiff alleges and accuses Defendants of intentionally discriminating against Plaintiff, not providing reasonable accommodations to Plaintiff, not modifying OnTrac policy to allow

equal access, and based on Exhibit M, and Plaintiffs claim, at the same time of this incident, other people were in the facility "not wearing a mask." (Exhibit N)

30. Pursuant to F. R. of Evid. 201(b)(2) and (c)(2) The Plaintiff respectfully Notices the Court that the accuracy of the pictures in Exhibit N cannot be reasonably questioned. Plaintiff asserts these pictures were taken, 1) inside the West Valley Facility, 2) in or around April 2021, and 3) before and after Defendant Flores confronted Plaintiff.

31. Pursuant to F. R. of Evid. 402, Plaintiff believes all exhibits and evidence provided meet the standard of being admissible and relevant.

32. Plaintiff has entered as Exhibit N, eleven pictures, and now describes for the Court exactly what these pictures prove. Plaintiff does not allege unequal treatment by the Defendants, Plaintiff has proof of unequal treatment that cannot be reasonably questioned.

33. **EXHIBIT N...**

34. **Picture Number 1**- Michelle and Inaldo, two drivers who work "west of Plaintiff". Supervisor Vanessa is talking to Michelle and says nothing to her or Inaldo about a mask.

35. **Picture Number 2**- Vanessa sitting at her desk inside the warehouse not wearing a mask.

36. **Picture Number 3**- Two drivers "east of Plaintiff" not wearing a mask.

37. **Picture Number 4**- Supervisor Tim walking in warehouse not wearing a mask.

38. **Picture Number 5**- Supervisor Tim- closer shot, checking his phone, no mask.

39. **Picture Number 6**- Michelle and Plaintiff talking, no mask.

40. **Picture Number 7**- Not only are all these people "not wearing a mask correctly," they are not wearing a mask, AT ALL. Left to Right, Unknown person, Vanessa, Tanya, and Erick Gonzalez, Owners of Eragon Express, Regional Service Providers for OnTrac.

41. **Picture Number 8**- Random Driver talking to Michelle, not wearing a mask.

42. **Picture Number 9**- Random Driver walking in warehouse without a mask, with Tanya at the desk behind him with NO mask At ALL.

43. **Picture Number 10**- Another Supervisor RSP, Name Unknown, with no mask, talking down to a driver whose nose is uncovered, with another driver, closer in the shot, with a U of U hat on, who has her "mask" hanging from her ear.

44. **Picture Number 11**- OnTrac employee and Dock Supervisor or "Dock Lead" Jeff walking around the warehouse with his "mask" around his chin.

45. **EXHIBIT N** (11 pictures) is now permanently part of this Complaint, mask non-compliance by others working in close proximity to the Plaintiff in the West Valley facility and

discrimination against Plaintiff has now been established. Plaintiff incorporates these pictures seen as Exhibit N into this complaint as if fully set forth herein. No defense can stand against Plaintiffs assertion that Brad Flores deliberately, intentionally, picked Plaintiff out of a crowd and discriminated against him, when the evidence shows masks are NOT being worn by, plausibly, 50% of the people in that warehouse. (Exhibit N)

46. Arguments will be raised by Defendants council and they will plead that OnTrac is private, or OnTrac is not an employer, but the evidence shows discrimination occurred against Plaintiff and the evidence is overwhelming that Plaintiff was treated differently than the rest of the people working in that facility that day. That is discrimination. Period. It hardly matters at this point whether Plaintiff is a vendor, an employee, or a customer, the damage has been done, and was done deliberately.

### C. DISABILITY DISCRIMINATION AT THE ONTRAC FACILITY JUDICIAL NOTICE TO THE COURT- LINE BY LINE REBUTTAL REQUESTED PURSUANT TO RULE 8 THESE FACTS 47-A TO 69-W MUST BE REBUTTED OR THEY STAND AS TRUTH

47. **A**. Plaintiff had a confrontation with Brad Flores, OnTrac Manager, at said facility two hours after Plaintiff arrived at the facility to load Plaintiff's route for the day. (Exhibit M)

48. **B**. Since the beginning of OnTrac's policy, Plaintiff has never worn a mask correctly over his mouth and nose.

49. **C**. Plaintiff was not wearing a mask, had not worn a mask since Plaintiff's arrival that day, and was shocked at the belligerent, threatening and discriminatory way Plaintiff was approached by Defendant Flores. (Exhibit M)

50. **D**. Plaintiff immediately pulled out Plaintiffs phone and started recording the incident, for admissible evidence and to make sure any physical altercation, or unlawful conduct that might occur was recorded. (Exhibit M)

51. **E**. The Transcript of the incident (Exhibit M) shows the following: Defendant Flores: "but if you don't wear a mask, you gotta leave <u>my</u> building right now." Plaintiff: "What is your name?" Defendant: "Brad Flores." Plaintiff: "Brad there's an exemption, and <u>you guys have to provide your people with an exemption</u>." (First Notice)(talking about OnTrac's mask policy) Plaintiff: "...the executive order from 2020, the one that he (Gov. Gary Herbert) put into office, says on page three, you must provide for an exemption for <u>people like me who have a disability</u>." (Second Notice) Defendant: "Okay, my corporate policy..." Plaintiff interrupts and says: "Your corporate policies do not override my rights or Utah State Law, Okay? I can show you the executive order." (Third Notice) [Plaintiff had at all times in his possession a true and complete copy of the Executive Order, CDC guidelines, and the Utah Public Heath Order showing the exemptions referred to, in the Van, on hand, in the facility, and shared this information with employees and customers on numerous occasions] Again, Plaintiff: "You must provide for exemptions for people like me who have disabilities." (Fourth Notice) Defendant: "What's your disability?" Plaintiff: "You can't ask that, that's Private."...Plaintiff: "I'm not trying to be an ass,... <u>I'm trying to Breathe</u>." Defendant: "I'm going to call HR, and I'll find out with HR,...If They Say Kick Your Ass Out, I'm Kicking Your Ass Out." (End of Video Transcript) (Exhibit M)

52. **F**. Defendant Flores admits on video conspiring with "HR" which should be construed as Defendant Westfall and Handley. (Exhibit M)

53. **G**. Plaintiff continued to load Plaintiffs Van, Plaintiff took some of the above pictures (Exhibit N) and approximately 15 minutes later Defendant Flores came back into Plaintiffs loading area and asked to see the Executive Order. (Exhibit J)

**54. H**. Plaintiff gave Defendant Flores the copy and showed Defendant the page and paragraphs that show the exemptions Plaintiff was requesting which were highlighted on the Order.

**55. I**. Defendant Flores left with the Order, plausibly to read and/or send by fax to Defendants working in Human Resources.

**56. J**. At approximately 10:00 A.M. Plaintiff left the facility to start Plaintiffs route and never saw or heard back from Defendant Flores, Westfall, or Handley in HR.

**57. K**. At this time, no contact was made by Eragon Express or Vendor Relations. Eragon Express was not a party to this action, Eragon was not involved in any way with the altercation. OnTrac didn't resolve the incident by first talking to Eragon. OnTrac confronted Plaintiff, and then OnTrac told Eragon that Plaintiff is no longer allowed in the building.

**58. L**. April 8th, 2021, was Thursday.

**59. M**. On Friday the 9th of April 2021, Plaintiff took the day off, as requested before the episode, to replace and repair parts on Plaintiffs Van.

**60. N**. Having heard nothing, Plaintiff called Vendor Relations on Friday the 9th from home and exchanged text messages with Vanessa at Eragon Express, just to see if everyone had calmed down, read the Law, and see if OnTrac agents were going to "accommodate" or "modify" their policy for the Plaintiff. (Exhibit O)

**61. O**. No Response, Vendor Relations was unaware and unhelpful.

**62. P**. Plaintiff communicated with a person named "Alisha" in Vendor Relations who reiterated OnTrac's mask policy and said Plaintiff has to wear a mask. (Alisha is a Doe 1-5)

**63. Q**. Sunday, April 11th, 2021, at 8:31 P.M. Plaintiff receives a text message from Vanessa (Exhibit O) stating: "I talked to Brad Friday and was still hoping that everything will be ok

but no he (Brad Flores) no longer wants you in the building and I can't do anything about it."
(Exhibit O)

**64.** Continuing with (Exhibit O), texts from Vanessa:

**65. R.** "Erick (Eragon Express) talk[ed] to Vendor Relations and **everyone** said it was up to Brad." (Exhibit O)

**66. S.** Defendant Brad Flores' decision and action directly impacted Plaintiffs right to work. Defendant Flores' decision and action is direct tortious interference with the contractual obligations between Eragon Express and the Plaintiff. Now, Plaintiff has been stripped of equal access to the building by Brad Flores, and taking away Plaintiffs right to work in the profession of Plaintiffs choice, robbing Plaintiff of hundreds of thousands of dollars in compensation over the next few years. (Relief requested for future earnings)

**67. T.** Brad Flores' denial of entry to the facility directly impacted Plaintiffs ability to operate in commerce, and destroyed Plaintiff's ability to access financial compensation of Plaintiffs choosing Plaintiff enjoyed for 3 years and into the future. (Exhibit Q)

**68. U.** Defendant Flores violated the ADA by not accommodating Plaintiff and/or modifying OnTrac policy, after conspiring with persons in HR. (Exhibit M, and O) Defendants Sara Westfall and Mary Kay Handley conspired together with Defendant Brad Flores and irreparable termination was the result. (Exhibit M, and O)

**69. V.** Defendants actions made Plaintiff "subject to OnTrac control" and Defendants "exercised control" which solidifies and confirms Plaintiff's argument of Host/Joint Employer and Public Accommodation as seen in Exhibit P. (Please See Resources 1-9 in Exhibit P)

**70. W.** Defendant Flores, representative of OnTrac, after admitting on video that Defendant was going to "call HR", conspired, even after being notice <u>four times</u> of Plaintiff's rights and the

law, even after being given a copy of the law, OnTrac, through its representative, Brad Flores, exercising the right to control, and actually exercising that right, showed Host/Joint Employer status by telling Vanessa (Exhibit O) that Plaintiff is no longer allowed on the property, thereby terminating Plaintiffs employment, substantially harming Plaintiff out of a job that paid approximately $56,000.00 a year, plus at least 5 more years of future compensation. Plaintiff had no intention of leaving his position. (Please See Exhibit Q)

71. Pursuant to Fed. Rules of Civ.P. 8(b)(6), Defendants denial of any part of this Statement of Facts must be rebutted with Affidavits and Evidence, mere denial should not be adequate for this Court. Plaintiff is verifying this Complaint by Sworn Declaration, and would ask the Court to Order the Defendants to do the same.

72. **JUDICIAL NOTICE OF UPPER COURT RULINGS.** "An attorney cannot admit evidence into the court. She/He is either an attorney or a witness." And "Statements of counsel in brief or in argument are not sufficient for motion to dismiss or for summary judgment," Also "Where there are no depositions, admissions, or affidavits the court has no facts to rely on for a summary determination." *Trinsey v. Pagliaro*, D.C. Pa. 1964, 229 F. Supp. 647.

73. Plaintiff would also respectfully ask the Court, not to allow the Defendants council to "pound the table" about "procedure". This Court knows that the Plaintiff is appearing without council and if there is no affidavits, or admissions, the court has nothing to rely on for granting a motion to dismiss. Mere opposition and/or arguments about Plaintiffs "procedure" should not persuade this Court. Plaintiff has well pleaded this Complaint. Individual Defendants named herein have the right to "assistance" of council, but nowhere does it say that they can hide behind a curtain of lawyers, Plaintiffs right to cross examine on the stand is inviolate.

Council has no firsthand knowledge of this Complaint and should not be allowed to add to the record "honeyed words or lengthy opinions".

74. "The representative of the Plaintiff is likely to be the only individual, now or in the future, who is willing and able to place a sworn affidavit affirming the herein disclosed facts under penalties of perjury, into the record of this case and as such, in absence of sworn counter-affidavit signed under the penalties of perjury regarding these same facts, laws, case laws and evidence, the Plaintiff should be the only prevailing party. *Morris v. National Cash Register*, 44 S.W. 2d 433, And *Group v. Finletter,* 108 F. Supp. 327 it states, "Allegations in affidavit in support of motion must be considered as true in absence of counter-affidavit."

75. OnTrac is operating in commerce, their operations affect commerce, they have the final say about everyone and everything that happens in their facility, they are considered a Host Employer, Joint Employer, and use Eragon Express as a Staffing Agency. (See OSHA Recommended Practices, (Exhibit P, Resource 6) or osha.gov. and cdc.gov/niosh

76. Plaintiff initiated a Charge of Discrimination on April 22nd, 2021, with the Utah Antidiscrimination and Labor Division. (Exhibit E) In the original "Determination and Order", the Investigator quoted case *Sizova v. Nat'l Inst. Of Stds. & Tech.*, 282 F.3d 1320, 1330 (10th Cir. 2002) which confirmed "two separate entities may be a workers employer." In *Browning-Ferris Industries v. NLRB* the courts held that "two companies would only be considered 'joint employers' equally responsible for certain labor and employment matters if they ***shared or codetermined*** those matters governing the essential terms and conditions of employment, and ***actually exercised the right to control***." (Exhibit E)

77. Plaintiffs Letter of Right to Sue from EEOC is attached as Exhibit E.

**78.** The Video Transcript (Exhibit M) and the Text Messages (Exhibit O) produce indisputable clear and convincing evidence that the decision of Brad Flores, OnTrac representative, is a Joint Employer or Host Employer "actually exercising the right to control."

**79.** OnTrac will argue that they are not Plaintiffs employer, and therefore the ADA doesn't apply or that Plaintiff is not an employee and they don't have the authority to hire and fire. The Text Messages from Vanessa and Plaintiff's Video Transcript tell a very different story.

**80.** In this Complaint, the employee/employer status is not the predominant issue in front of this court but does effect Plaintiff's claim under Title I and II of the Act. OnTrac is liable for Brad Flores' action under the ADA and the Plaintiff has well pleaded this complaint and has evidence entered that conflict with any arguments Defendants might try to maintain. Plaintiff believes OnTrac meets the definition of a public accommodation, and Host/Joint Employer.

**81.** The facts show that Plaintiff's right to free and equal access were denied and as a result, termination was the product, and a violation of the ADA resulted. Defendants ***admit*** in documents and ***in their policy*** they do not provide accommodation or modification for the disabled. (Please See Exhibit R) On page five, a letter from OnTrac dated May 12th, 2021, OnTrac ***admits*** Plaintiff "refused to wear a mask so he was not allowed entry to our warehouse". Added as Page Six to this Exhibit, is the notice on the door of a Wells Fargo Bank. It says, "if you are a customer that needs ADA access, please call … and a team member will assist you **into** the branch". Obviously, Wells Fargo knows the Law, and has provided accommodations. OnTrac's policy was rigid, inflexible, and unyielding. OnTrac policy does not provide accommodation for the disabled, and they ***admit*** they don't. That policy is inconsistent with codified law, and is an admittance of guilt.

82. The mask policy, guidelines, opinions, suggestions, orders, mandates, directives, declared by "authorities" are just that. Suggestions. Guidelines. They are NOT law. All three government agencies provided exemptions because *they know* certain people cannot wear a mask, and should not wear a mask. Many States never had a mask policy.

83. Mask guidelines written by the Governor, the Utah Public Health Department and the Center for Disease Control all state very clearly that exemptions must be provided for certain individuals. OnTrac's policy did not follow the very guidelines they say they are following. OnTrac is enforcing page one and not page two and three of the orders/guidelines.

84. The ADA states that accommodations and/or modifications to policy must be made so disabled persons have free and equal access. (Exhibit D) OnTrac violated the ADA by not providing accommodations and/or modifying their policy for the Plaintiff. The OnTrac COVID-19 Policy made no accommodation for anyone with disabilities and prevented Plaintiff from entering its facility. Instead, said policy imposed a no-exception blanket rule, barring anyone not wearing a face mask entry into the facility – period. (Exhibit R)

### D. JUDICIAL NOTICE TO THE COURT: MEMORANDUM OF POINTS AND AUTHORITIES, CONGRESSIONAL FINDINGS REGARDING THE ADA AND PUBLIC ACCOMMODATIONS

1. **OVERVIEW OF THE AMERICANS WITH DISABILITIES ACT** (ADA). The ADA is the first federal statute that protects individuals from discrimination based on disability **regardless of whether they are seeking employment or access to services from a public or private entity** or from an agency that receives federal financial assistance. **The ADA guarantees equal opportunity for individuals with disabilities in public accommodations, employment, transportation,** state and local government services, and telecommunications. It extends comprehensive civil rights protection to individuals with disabilities. The ADA has five separate titles, which are briefly described below. (1) Title I. Title I prohibits discrimination in employment on the basis of disability. The EEOC has responsibility for ensuring compliance with Title I under its regulations at 29 CFR Part 1630. (2) Title II. Title II prohibits discrimination on the basis of disability by public entities. Public entities include (1) any state or local government; and (2) any department, agency, special purpose district, or other instrumentality of a

state or states or local government. (3) Title III. **Title III of the ADA addresses public accommodations, defined generally as private entities that affect commerce.**

2. **CONGRESSIONAL FINDINGS.** In passing the ADA, Congress enumerated a number of findings that provide background for the legislation. The findings are presented below to provide those responsible for implementing the ADA with a better understanding of the context of the requirements. (1) Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older. (2) Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem. (3) Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services. (4) Unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination. (5) **Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.** (6) Census data, national polls, and other studies have documented that individuals with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally. (7) Individuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society. (8) **The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity,** full participation, independent living, and economic self-sufficiency for such individuals. (9) **The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis** and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and lack of productivity.

https://www.faa.gov/documentLibrary/media/advisory_circular/150-5360-14/150_5360_14.PDF

## E. MASK DOCUMENTS AND ARTICLES SENT TO ONTRAC LEGAL NOTICE AND LETTER OF INTENT

Plaintiff now incorporates these documents and articles into the record as if fully set forth herein,

and notices the court that Plaintiff made more than a reasonable amount of effort to notice

OnTrac of their unsafe, unhealthy, ineffective, discriminatory policy. Plaintiff asks on multiple occasions in his legal notices to accommodate the Plaintiff and OnTrac refused.

**85.** Gary Herbert's Executive Order 2020-75, Plaintiff highlighted the exemption clause. Brad Flores was given a copy. (Exhibit J)

**86.** State Public Health Order 2021-10, Plaintiff highlighted the exemption clause. (Exhibit K)

**87.** CDC "Guidance for Wearing Masks," Highlighted, "Who should or should not wear a mask" and "CDC recognizes there are specific instances when wearing a mask may not be feasible." "The following categories of people are **exempt** (Plaintiff asked for an exemption) from the requirement to wear a mask." "A Person with a disability who cannot wear a mask, or cannot safely wear a mask, for reasons related to the disability." And "a person for whom wearing a mask would create a risk to workplace health, safety, or job duty." Face Shields. "CDC does not recommend using face shields or goggles as a substitute for masks." **Aerosol Science and Technology study-** Efficacy of face masks, neck gaiters and face shields for reducing the expulsion of simulated cough-generated aerosols. Page 56, "a medical grade procedure mask blocked 59%, a three ply cotton cloth face mask blocked 51% and a polyester neck gaiter blocked 47%... Face shield, 2%." CDC- Requirement for face masks...transportation hubs. "The following categories of people are exempt... A person with a disability...as defined by the Americans with Disabilities Act (42 U.S.C.12101 *et seq*.) **OSHAFactSheet-Surgical Masks.** "Surgical masks are not designed or certified to prevent the inhalation of small airborne contaminants...they cannot be relied upon to protect workers against airborne infectious agents." (Exhibit L)

**88. INCLUDED IN EXHIBIT "F" ARE THE FOLLOWING DOCUMENTS:**

**89. Masks Don't Work and Are Unhealthy.** Page 1- Chemical Off-Gassing, Page 2, Damage to the Immune System, Impaired Cognitive performance, Suppressed Thyroid Function, Blood Sugar Imbalances, Decreased Bone Density, Decreased Muscle Tissue, High Blood Pressure, and Lowered Immunity.

**90. Dr. Blaylock, Face Masks Pose Serious Risks To The Healthy.** Doctor Blaylock warns that not only do face masks fail to protect the healthy from getting sick but they also create

serious health risks to the wearer. Bottom line is that if you are not sick you should not wear a face mask.

91. **Global Research- 20 Reasons Mandatory Face Masks Are Unsafe, Ineffective, And Immoral**. Cavities, Facial Deformities, Acne Vulgaris, Increased Risk Of COVID-19, Bacterial Pneumonia, Immune Suppressing, Germaphobia, Psychologically Harmful, and Substantial, Unreasonable, Ineffective, Unsanitary, No Protection, Unproven, Reckless, Manipulative, Fear Mongering, Totalitarian, and Virtue Signaling.

92. **Dr. Dennis Rancourt. Ph.D- The Science is Conclusive: Masks and Respirators Do Not Prevent Transmission of the Virus.**

93. **Conclusion Regarding Masks They Do Not Work.** Attachment B from Dr. Sheri Tenpenny

94. **Article 1-** COVID-19 Masks Causing Rise In Bacteria Pneumonia,

95. **Article 2-** Bacterial Pneumonia And Other Health Risks of Wearing Masks Alarm Doctors,

96. **Article 3-** Oklahoma Doctors Claim Masks are Harmful to Healthy People,

97. **Article 4-** Danish Study- Masks Don't Protect Wearers From COVID Infection,

98. **Article 5-** *JAMA* Medical Masks Should Not Be Worn By Health People,

99. **Article 6-**Facemasks in the COVID-19 era: A health hypothesis, NIH, Nat. Library of Medicine, Masks are Unhealthy and Unsafe.

100. **Article 7-** Review of Scientific Reports of Harms Caused by Face Masks, Up to February 2021.

## F. ONTRAC IS A PUBLIC ACCOMMODATION, ONTRAC OPERATIONS AFFECT COMMERCE, ONTRAC RECEIVES FINANCIAL COMPENSATION FROM THE FEDERAL GOVERNMENT, PROVIDES SERVICES TO THE PUBLIC, AND IS A CRITICAL ESSENTIAL INDUSTRY

101. **Exhibit P, Resource 1 - 2015 Utah Code, Title 13 - Commerce and Trade, Chapter 7 - Civil Rights, Section 2 - Definitions.** (1)a.

   a. (a) "Place of public accommodation" includes **every place**, establishment, or facility of **whatever kind**, nature, or class that caters or offers its services, facilities, or goods to the general public for a fee or charge, . . .

   b. (b) A place, establishment, or facility that caters or offers its services, facilities, or goods to the general public gratuitously shall be within the definition of this term if it receives any substantial governmental subsidy or support.

102.   **Exhibit P, Resource 2   NAICS.com** North American Industrial Classification System-, Classification of Express Messenger Systems Inc, (OnTrac) – PUBLIC.

103.   **Exhibit    P,    Resource    3    https://www.lawinsider.com/dictionary/public-accommodation** - means each and every place, establishment, or facility of whatever kind, nature, or class that caters or offers services, facilities, or goods for a fee or charge to nonmembers of any organization or association utilizing the place, establishment, or facility, provided that any place, establishment, or facility that caters or offers services, facilities, or goods to nonmembers gratuitously shall be deemed a public accommodation if the accommodation receives any substantial governmental support or subsidy,

104.   **Public accommodation** means and includes every business, professional or commercial enterprise, hospital or nursing home, refreshment, entertainment, sports, recreation or transportation facility located in the County, whether licensed or not, non-government entities, whose goods, services, facilities, privileges, advantages or accommodations are extended, offered, sold or otherwise made available in any manner to the public,

105.   **Public accommodation** means a place, business establishment, or agency that sells, leases, provides, or offers any product, facility, or service to the general public, regardless of ownership or operation,

106.   **Public accommodation** means a business, accommodation, refreshment, entertainment, recreation, or transportation facility where a good, service, facility, privilege, advantage, or accommodation is offered, sold, or otherwise made available to the public.

107.   **Public accommodation** means a common carrier, airplane, motor vehicle, railroad train, motor bus, streetcar, boat, or other public conveyance or mode of transportation.

108.   **Public accommodation** means any place or any means of transportation which is open to, accepts or solicits the patronage of members of the general public.

109.   **From United States Congress**: The "Data Accountability and Transparency Act of 2020" PUBLIC ACCOMMODATION.—The term "public accommodation" means any type of business considered a place of public accommodation pursuant to section 201(b) of the Civil Rights Act of 1964 (42 U.S.C. 2000a(b)) or section 301(7) of the Americans with Disabilities Act of 1990 (42 U.S.C. 10 12181(7)) **or a business that offers goods or services through    the    internet    to    the    general    public.**

www.banking.senate.gov/imo/media/doc/Brown%20%20DATA%202020%20Discussion%2
0Draft.pdf

110. **Exhibit P, Resource 4**   lawyers.findlaw.com Is your Private Business a Public
Accommodation?  OnTrac is a public accommodation whose operations effect commerce.

111. **Exhibit P, Resource 5**  CDC Categories of Essential Workers, Industries Classified by
the NAICS, OnTrac is a Public, Critical Industries Service. Multi-Employer Workplaces,
"for workers employed by a mix of employers, the agency and the host employer are joint
employers and therefore are responsible".

112. **Exhibit P, Resource 6**   OSHA-NIOSH Temporary Workers – "Both the Staffing
Agency and the Staffing Agencies Client are Joint Employers."

113. OnTrac's Public Website where they sell their services found at ontrac.com. If you sell
your services on the Internet, YOU ARE A PUBLIC ACCOMMODATION.

114. **Exhibit P, Resource 7** Labor Commission Determination and Order- Two separate
entities may be a workers employer, See *Sizova v. Nat'l Inst. Of Stds & Tech.,* 282 F.3d 1320,
1330 (10th Cir. 2002)

115. **Exhibit P, Resource 8** NLRB, Decision in Browning-Ferris Industries- in the decision,
the board applies long established principles to find that two or more entities are joint
employers of a single workforce if (1) they are both employers within the meaning of the
common law; and (2) they share or co-determine those matters governing the essential terms
and conditions of employment.

116. **Exhibit P, Resource 9** Southern and Eastern Dist. Court in New York- *Markett v. Five
Guys Enterprises,* and *Andrews v. Blick Art Materials-* "websites selling these goods were
places of public accommodation". OnTrac website- ontrac.com.

117. Plaintiff also adds to this record that OnTrac's facility is built to accommodate the
disabled, they have handicap parking, handicap ramps, wide doorways, and no stairs. That
confirms and addresses any doubt that the facility OnTrac operates is a Public
Accommodation. OnTrac falls within/under the ADA.

## G.  CAUSES OF ACTION

**COUNT ONE - VIOLATION OF THE FEDERAL AMERICANS WITH DISABILITIES
ACT OF 1990 [42 U.S.C. §§ 12101 et seq.]
(Against Defendants Individually and Artificial Persons)**

1.  Plaintiff hereby incorporates by reference the allegations, exhibits, and pictures contained in
    the preceding paragraphs as if fully set forth herein.

2.  The Americans With Disabilities Act of 1990 (The Act) prohibits, among other things,
    discriminating against disabled persons' full and equal enjoyment of the goods, services,
    facilities, privileges, advantages, or accommodations by any person who owns, leases, leases
    to, or operates a place of public accommodation. (42 U.S.C. §§ 12101 et seq.); (hereinafter
    "ADA" or "Act")

3.  Title III of the Act, which applies specifically to public accommodations and services
    operated by private entities, defines disability discrimination as any businesses that is open to
    the public that imposes eligibility criteria that screens or tends to screen out persons with
    disabilities, such as OnTrac's blanket requirement that everyone wear masks without
    exception, including persons with disabilities.

4.  Title III of the Act, also defines disability discrimination as the failure of a place of public
    accommodation to implement reasonable modifications to its policies, practices, or
    procedures, when such modifications are necessary to afford such goods, services, facilities,
    privileges, advantages, or accommodations to individuals with disabilities, such as face mask
    policies that impose a blanket requirement that everyone wear masks without exception,
    without modifying said policy to accommodate individuals with disabilities.

5.  Defendant OnTrac and its agents, own, lease, or operate a place of public accommodation
    within the meaning of Title III of the ADA (42 U.S.C. § 12181(1) and (2) in that OnTrac's

operates a commercial facility that directly affects commerce, and they provide essential services to the public.

6. During the beginning of the COVID-19 outbreak OnTrac gave its drivers a letter to place in the window of the delivery van to show Police and other Authorities that Plaintiff was considered an "essential worker", having to do with commerce and getting essential items to hospitals and other facilities during a pandemic. (Exhibit C) OnTrac literally got permission from the Government to continue providing essential services, arguably, OnTrac became a public entity, or utility, providing essential services to government entities and hospitals during an outbreak.

7. OnTrac is also a contract carrier of the United States Mail. Arguably, OnTrac Drivers are Mail Carriers within the meaning of a federal employee, if even for a short time. If you are a mail carrier you are part of the Federal Government.

8. Plaintiff has an impairment that substantially limits one or more major life activities. Said disability limits plaintiffs major life activities and or major bodily functions including performing manual tasks, walking, speaking, breathing, concentrating, and communicating while wearing a facial mask that covers Plaintiff's nose and mouth.

9. Plaintiff communicated Plaintiff's disability to Defendant Flores and asked for an exemption, seen in the Transcript, plaintiff also contacted OnTrac corporate on multiple occasions and also asked for modification/accommodation seen in the Legal Notices and Letter of Intent entered in this complaint.

10. Defendants understood that plaintiff had a respiratory disability at all times set forth herein. Plaintiffs disability was a motivating cause of Defendants exclusion of plaintiff from the full

and equal enjoyment of, and participation in, the goods, services, facilities, privileges, advantages, and or accommodations Plaintiff enjoyed at OnTrac for 3 years.

11. Among other reasons, employees, and agents of OnTrac conspired together and barred plaintiff from entry into its place of public accommodation based on OnTrac's COVID-19 policy that anyone not wearing a face mask such as plaintiff are barred entry into any and all OnTrac facilities. (Exhibit R)

12. OnTrac's publicly stated policy barring anyone not wearing a face mask without exception, is directly inconsistent with the recommendations of the Governor of Utah's Executive Order, The Utah Department of Health Public Health Order, and CDC Guidelines. (Exhibits J, K, and L)

13. Reactions of the employees and agents of OnTrac described herein, combined with OnTrac COVID-19 policy posted on the outside walls of the facility for public view on and before the date of the incident on April 8th 2021 made it unmistakably clear that the plaintiff was permanently and indefinitely barred from entry into the OnTrac facility with no exceptions, regardless of respiratory or other breathing impairments such as those that plaintiff has, notwithstanding the present and ongoing directives of Public Health Officials.

14. After advising Defendants of Plaintiff's right to an exemption to OnTrac policy, (See Transcript) OnTrac HR Department personnel and Defendant Flores conspired together and decided to exclude Plaintiff from entry, tortiously interfered with contractual obligations Plaintiff had with Eragon Express, thereby cause substantial financial harm to the Plaintiff, in the amount of $56,000.00 dollars a year, plus hundreds of thousands of dollars of future compensation. (Exhibit Q)

**15.** It is also reasonable to assume that OnTrac's policy was illegally enforced against Plaintiff, because of the substantial amount of pictures Plaintiff has submitted showing that "others" were not following the policy, yet they were allowed the full and equal enjoyment of, and participation in, the goods, services, facilities, privileges, advantage, and/or accommodations at OnTrac. Therefore, Plaintiff is entitled to relief pleaded in this Complaint.

### COUNT TWO- VIOLATION OF THE FEDERAL AMERICANS WITH DISABILITIES ACT OF 1990 [42 U.S.C. §§ 12101 et seq.] (Against Defendants Individually and Artificial Persons)

**16.** Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

**17.** Title II of the Act which applies to public services states "no qualified individual with a disability shall by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subject to discrimination by any such entity."

**18.** Upon information and belief, OnTrac is a contractor, agent, agency, entity, special purpose, political subdivision, department of or franchise of the Federal Government. OnTrac is a public entity providing critical, essential, public services, and by its use of Social Security Numbers, Banking, Commercial Carriers, Employer Identification Numbers, Income Tax Forms, receiving and transporting federal property across state lines known as the United States Mail, OnTrac is literally part of the government.

**19.** Plaintiff believes OnTrac to be within the meaning of a public service. In Title II of the Act OnTrac is operating a commercial facility, they affect commerce, and a public entity providing services to the public. (42 U.S.C. 12131(1)) (42 U.S.C. 2000a et seq.) (Exhibit P)

**20.** Title II of the Act, which applies to public services, provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity.

**21.** Title III of the Act, also defines disability discrimination as the failure of a place of public accommodation to implement reasonable modifications to its policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, such as OnTrac's face mask policy that impose a blanket requirement that everyone wear masks without exception, without modifying said policy to accommodate individuals with respiratory disabilities, or other exemptions found in the "guidelines".

**22.** Defendant OnTrac and its agents, own, lease, or operate a place of public accommodation within the meaning of Title III of the ADA (42 U.S.C. § 12181(1) and (2) in that OnTrac's operates a commercial facility that directly affects commerce, and they provide essential services to the public. (28 CFR Part 36.101, 36.102, and 36.104)

**23.** During the beginning of the COVID-19 outbreak OnTrac gave its drivers a letter to place in the window of the delivery van to show Police and other authorities that Plaintiff was considered an "essential worker", having to do with commerce and getting essential items to hospitals and other facilities during a pandemic. OnTrac is partnered with and seen as a "Critical, Essential", part of governmental operations.

**24.** Plaintiff has an impairment that substantially limits one or more major life activities. Said disability limits plaintiffs major life activities and or major bodily functions including

performing manual tasks, walking, speaking, breathing, concentrating, and communicating while wearing a facial mask that covers Plaintiff's nose and mouth.

**25.** Plaintiff communicated plaintiffs disability to Defendant Flores and asked for an exemption, seen in the transcript, plaintiff also contacted OnTrac corporate on multiple occasions and also asked for modification/accommodation seen in the legal notices entered in this complaint. Defendants understood that plaintiff had a respiratory disability at all times set forth herein.

**26.** Plaintiffs disability was a motivating cause of Defendants exclusion of plaintiff from the full and equal enjoyment of, and participation in, the goods, services, facilities, privileges, advantages, and or accommodations Plaintiff enjoyed at OnTrac for 3 years.

**27.** Among other reasons, employees, and agents of OnTrac barred plaintiff from entry into its place of public accommodation based on OnTrac's COVID-19 policy that anyone not wearing a face mask such as plaintiff are barred entry into any and all OnTrac facilities. (Exhibit R)

**28.** OnTrac's publicly stated policy barring anyone not wearing a face mask without exception, is directly inconsistent with the recommendations of the Governor of Utah's Executive Order, The Utah Department of Health Public Health Order, and CDC Guidelines. (Exhibits J, K, and L)

**29.** Reactions and decisions of the employees and agents of OnTrac described herein, combined with OnTrac COVID-19 policy posted on the outside walls of the facility for public view on and before the date of the incident on April 8th 2021 made it unmistakably clear that the plaintiff was permanently and indefinitely barred from entry into the OnTrac facility with no

exceptions, regardless of respiratory or other breathing impairments such as those that plaintiff has, notwithstanding the present and ongoing directives of the CDC.

**30.** After advising Defendants of Plaintiffs right to an exemption to OnTrac policy, (Exhibit M) OnTrac HR Department personnel and Defendant Flores conspired together and decided to exclude Plaintiff from entry, thereby cause substantial financial harm to the Plaintiff, in the amount of $56,000.00 dollars a year. (Exhibit Q)

**31.** It is also reasonable to assume that OnTrac's policy was illegally enforced against Plaintiff, because of the substantial amount of pictures Plaintiff has submitted showing that "others" were not following the policy, yet they were allowed the full and equal enjoyment of, and participation in, the goods, services, facilities, privileges, advantage, and/or accommodations at OnTrac. Therefore, Plaintiff is entitled to relief pleaded in this Complaint.

### COUNT THREE- VIOLATION OF FEDERAL CIVIL RIGHTS ACT [42 U.S.C. § 1983] CIVIL ACTION FOR DEPRIVATION OF RIGHTS (Against Defendants Individually and Artificial Persons)

**32.** Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

**33.** Section 1983 of The Civil Rights Act (42 U.S.C. § 1983) states in part: **Every person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress... 18 U.S.C. § 242 is a criminal statute but the language is important here: **Whoever**, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State...or

District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States…shall be fined under this title or imprisoned not more than one year, or both;

34. Express Messenger Systems Inc. dba OnTrac is a corporation, DUNS Number 83-756-3717. Black's Law Dictionary confirms: A corporation is a "person" within the meaning of equal protection and due process provisions of the United States Constitution. *Allen v. Pavach*, Ind., 335 N.E.2d 219, 221; and *Borreca v. Fasi*, D.C. Hawaii, 369 F. Supp. 906, 911.

35. Plaintiff argues and maintains that representatives of OnTrac were acting under color of law in three ways: 1) Based on the evidence that masks are ineffective, unsafe, and unhealthy, their mask policy was built on lies and misinformation. Enforcement of a no-exception policy based on lies is considered color of law when it appears you have the right, but you do not. (18 U.S.C. § 242) 2) OnTrac's mask policy is inconsistent with CDC guidelines. OnTrac's mask policy was directly inconsistent with The ADA (42 U.S.C. § 12101 et seq.) and their interpretation of CDC guidelines (Exhibit L) was intentionally, deliberately, maliciously enforced against Plaintiff, even after Plaintiff made multiple attempts at contacting OnTrac corporate and HR representatives to show their violation. OnTrac appeared to have authority to force a mask onto Plaintiff's face, but they do not. And 3) The Mask is Emergency Use Authorized ONLY. Plaintiff asserts OnTrac's assumption of authority to force mask wearing by all persons in their facility shows both contempt and ignorance of the Law. Plaintiff asserts in this Count, OnTrac operated under Color of law; **"Color of law"** refers to an act done under the appearance of legal authorization, when in fact, no such right existed. It applies when a "person" is acting under real or apparent government authority.

https://definitions.uslegal.com/c/color-of-law/ Therefore, Plaintiff is entitled to relief pleaded in this Complaint.

### COUNT FOUR- CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS [42 U.S.C. § 1985] (3)Depriving Persons Of Rights Or Privileges (Against Defendants Individually and Artificial Persons)

**36.** Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

**37.** 42 U.S.C. § 1985 states: If two or more persons in any State...conspire...on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws...in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**38.** Defendants Brad Flores, Sara Westfall, and Mary Kay Handley, conspired together, as confirmed by Exhibit M to deny Plaintiff a disability exemption, modification and/or accommodation. Plaintiff's disability was the motivating cause of OnTrac agents Flores, Westfall, and Handley to exclude Plaintiff from the full and equal enjoyment of, and participation in, the goods, services, facilities, privileges, advantages, and accommodations at OnTrac. Defendants Flores, Westfall, and Handley conspired together to enforce and impose a colorable corporate policy with a no-exception blanket rule barring anyone not wearing a face mask entry into the facility, including persons with HIV and respiratory disabilities.

**39.** The actions of these conspirators caused irreparable harm to Plaintiff, Plaintiff was barred from entering OnTrac's facility, resulting in Plaintiff losing approximately $56,000.00 dollars a year compensation that Plaintiff enjoyed for 3 years before the policy. (Exhibit Q) From The Transcript, Exhibit M, "I'm calling HR, and if they say kick your ass out, I'm kicking your ass out". (Defendant Flores Speaking) Plaintiff has worked for OnTrac for 3 years and had no intention of leaving, Plaintiff is 55 years old, and plausibly, had at least 5 more years of work ahead, OnTrac stole hundreds of thousands of dollars from Plaintiff.

**40.** Defendants publicly stated policy barring everyone from entry without wearing a face mask without exception, is directly inconsistent with the recommendations of the CDC. After advising agents at OnTrac of Plaintiff's disability Plaintiff requested a reasonable exemption to the policy. However, the employees and agents of OnTrac refused, despite the directives of the CDC, The Governor of Utah, and the Utah Department of Health Orders.

**41.** As seen in Exhibit M and Exhibit N Brad Flores, Sara Westfall, and Mary Kay Handley did conspire together, intentionally, with forethought, and deliberately deprived Plaintiff of Rights secured by the ADA. Defendants directly denied Plaintiff equal protection under the law and enforced a colorable mask policy on Plaintiff, with no authority, and without the required accommodations to Plaintiff's class of protected person. Therefore, Plaintiff is entitled to relief pleaded in this Complaint.

### COUNT FIVE- VIOLATION OF SECTION 546 OF THE FOOD, DRUG, AND COSMETIC ACT 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) [Authorization For Medical Products For Use In Emergencies] Emergency Use Authorization Violation of Plaintiff's Right of Informed Consent And Right To Refuse (Against Defendants Individually and Artificial Persons)

**42.** Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

**43.** Emergency Use Authorization (EUA) vs. FDA approval. An emergency use authorization is a mechanism to facilitate the availability and use of medical countermeasures, including masks, during public health emergencies, such as the COVID-19 pandemic. Under an EUA, the FDA may allow the use of unapproved medical products in an emergency to diagnose, treat, or prevent serious or life-threatening diseases or conditions when certain statutory criteria have been met, including that there are no adequate, approved, and available alternatives. www.fda.gov/media/144414/download/emergency-use-authorization-explained

**44.** Since emergency use authorization means the products (masks) are investigational and experimental only, products approved for emergency use are prohibited from being mandated or forced upon someone, and an individual must consent to the use of the experimental product. 360bbb-3(ii) "individuals to whom the product is administered are informed...(lll) of the option to accept or refuse administration of the product." (360bbb-3(e)(1)(A)(ii)(lll))

**45.** Defendants demanded Plaintiff wear a surgical mask without giving informed consent, without giving Plaintiff the option to accept or refuse, and violated the above law. Plaintiff refused OnTrac's demand to participate in their unlawful EUA experiment and as a result, Plaintiff suffered irreparable harm. Defendants irresponsible barring of Plaintiff from entering their facility was deliberate, illegal, ignorant, uneducated, and immoral. Therefore, Plaintiff is entitled to relief pleaded in this Complaint.

### COUNT SIX- VIOLATION OF THE FEDERAL AMERICANS WITH DISABILITIES ACT OF 1990 [42 U.S.C. §§ 12101 et seq.] 42 U.S.C. § 12182(b)(1)(A)(ii) (Against Defendants Individually and Artificial Persons)

**46.** Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

**47.** 42 U.S.C. § 12182(b)(1)(A)(ii) states: "It shall be discriminatory to afford an individual ...,
on the basis of a disability or disabilities of such individual ... with the opportunity to
participate in or benefit from a good, service, facility, privilege, advantage, or
accommodation that is not equal to that afforded to other individuals." Defendants Flores
along with agents known and unknown conspired together and discriminated against Plaintiff
as seen above. Defendants maliciously, intentionally, deliberately barred Plaintiff from
enjoying and participating in benefits, goods, services, facilities, privileges, advantages, or
accommodations not equal to that afforded to other individuals in that building at that time.
As a result of Defendants discrimination, Plaintiff was terminated, causing irreparable
financial and equitable damage to the Plaintiff. Therefore, Plaintiff is entitled to relief
pleaded in this Complaint.

### COUNT SEVEN- VIOLATION OF SECTION 546 OF THE FOOD, DRUG, AND COSMETIC ACT, 21 U.S.C. § 360bbb–3(b)(1)(C): (Against Defendants Individually and Artificial Persons) There is No Emergency There is No Pandemic There Is No Authority

**48.** On February 4, 2020, the Department of Health and Human Services ("DHHS") Secretary
declared, pursuant to § 360bbb–3(b)(1)(C), that SARS-CoV-2 created a "public health
emergency." The emergency declaration is the necessary legal predicate for the issuance of
the EUAs, which have allowed the mass use of the mask by the American public, even before
the completion of the standard regimen of clinical trials and FDA approval. The emergency
declaration and its multiple renewals are **illegal**, since in fact there is no underlying
emergency. Assuming the accuracy of Utah and CDC COVID-19 death data, SARSCoV-2
has an overall survivability rate of 99.8% globally, which increases to 99.97% for persons
under the age of 70, on par with the seasonal flu. Defendants' relied on data that was
deliberately inflated. On March 24, 2020, DHHS changed the rules applicable to coroners

and others responsible for producing death certificates and making "cause of death" determinations exclusively for COVID-19. The rule change states: "COVID-19 should be reported on the death certificate <u>for all decedents where the disease caused *or is assumed to have caused or contributed* to death." In fact, DHHS statistics show that 95% of deaths classed as "COVID-19 deaths" involve an average of **four additional co-morbidities**</u>. Which means people died because they were obese, diabetic, smoked, had cancer, or all of the above. Plaintiff mentioned in the beginning of this Complaint that some documents were left out for being irrelevant. Plaintiff TOLD OnTrac about the corruption and misinformation from the CDC. Plaintiff TOLD OnTrac about the fake PCR test. Plaintiff TOLD OnTrac about the masks. Plaintiff TOLD OnTrac to stop discriminating. On April 11th, 2021, The Deseret News states "Utah's COVID-19 death rate is around 0.5%." Exhibit S shows the following: 1) Deseret News Article, 2159 people died (allegedly) from COVID-19 in Utah, 2) Utah's Population in 2021 is 3,310,774. And 3) PercentageCalculator.com actually shows 0.065% percentage of the Utah Population allegedly died from COVID-19. That is NOT an emergency, nor is it a pandemic. OnTrac had NO REASON to invoke their policy, nor did they have authority to demand and enforce their tyrannical, overbearing, no-exception, colorable, illegal policy. OnTrac has no proof of a pandemic. OnTrac has no proof of a public health emergency. OnTrac has NO Authority or Power to Muzzle the Plaintiff. Several lawsuits are pending against the CDC and DHHS for abusing this statute, and OnTrac's no exception mask policy was not based in reality. Therefore, Plaintiff is entitled to relief pleaded in this Complaint.

## COUNT EIGHT- INTENTIONAL TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS- INTENTIONAL TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS OR EXPECTANCY

49. "At common law, a defendant is liable to pay damages in tort for actions intended to interfere with the plaintiff's contractual relations with a third party." (Eragon Express/Plaintiff)

50. "In an intentional interference claim, the burden is on the plaintiff to prove the elements of the claim rather than on the defendant to prove that its acts were justified. To prevail on the claim, plaintiff must prove four elements: (1) that a valid contract existed, (2) that defendant had knowledge of the contract, (3) that defendant acted intentionally and improperly, and (4) that plaintiff was injured by the defendant's actions." *United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 812, 551 N.E.2d 20 n. 6 (Mass. 1990).

51. The Utah Supreme Court has ruled in *Eldridge v. Johndrow*, 2015 UT 21, 2015 WL 404491 "in order to win a tortious interference claim under Utah law, a plaintiff must now prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff." This decision makes Utah's tortious interference doctrine comport with the majority of other states.

52. OnTrac has a contract with Eragon Express. Eragon has a contract with Plaintiff. OnTrac intentionally, with malice, intent, and forethought, barred Plaintiff from entry, whereby destroying Plaintiffs obligation Plaintiff had with Eragon Express. OnTrac at all times relevant to this case knew about the contractual relations between Plaintiff and Eragon Express. These acts were committed by the Defendants which they knew or should have known would result in harm, they realized that Plaintiff would be financially devastated by their action and did it anyway. OnTrac used improper means alleged herein and intentionally interfered with Plaintiffs right to fulfill Plaintiffs obligation Plaintiff had with Eragon

Express, causing the well pleaded injury to the Plaintiff. Therefore, Plaintiff is entitled to relief pleaded in this Complaint.

### COUNT NINE- VIOLATION OF THE 14th AMENDMENT- U.S. CONSTITUTION
### Right to Work, Liberty Interest to Engage in Business Activity

53. "The 14th Amendment guarantees a citizen's right to work for a living and support [himself] by pursuing a chosen occupation." *Board of Regents v. Roth,* 408 U.S. 564, 572 (1972); *Truax v. Raich,* 239 U.S. 33, 41 (1915) ("It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [14th] Amendment to secure." Without the right to work in a profession of our own choosing, rather than being directed into a profession by state bureaucrats or being directed not to work and placed on state subsidies, we are slaves. Defendants are liable for the alleged conduct in that Defendants, acting under color of law and authority, personally, through their own actions, with deliberate indifference, set the conditions for, committed, directed, ordered, confirmed, ratified, acquiesced, had command responsibility for, aided and abetted, conspired to, and/or otherwise directly or indirectly caused or facilitated, the violations of law set forth herein, which have deprived Plaintiff of Plaintiffs clearly established, constitutionally protected liberty interest in working in the profession of Plaintiffs own choosing, of which a reasonable person would have known, thereby injuring Plaintiff economically, emotionally, physically, and psychologically. Therefore, Plaintiff is entitled to relief pleaded in this Complaint.

### H. <u>CONCLUSION</u>

54. Plaintiff comes to this Court with Clean Hands and in Good Faith. Plaintiff has entered an exhaustive amount of evidence in this Instant Case and has proved beyond a reasonable

doubt that Plaintiffs Complaint is neither frivolous or capricious. Plaintiffs claim has merit, and this Complaint is now ripe for judicial review.

55. Plaintiff has been subjected, for over a year, to sustained psychological manipulation regarding SARS-CoV-2 and COVID-19 mask mandates through fear-based public messaging designed to induce compliance with draconian countermeasures of questionable constitutionality. The unyielding no-exception COVID-19 mask policy at OnTrac has inflicted incalculable psychological, emotional, and economic loss on the Plaintiff.

56. In these dire times, the Plaintiff is now instructed to "wear a mask" and to "take the Vaccine" in order to regain Plaintiffs freedoms and some semblance of normalcy in Plaintiffs daily life. At the same time, Plaintiff is bombarded and presented with substantial incentives and rewards for "wearing a mask" accepting the "Vaccines", and penalties such as job loss, suspension or termination from school, and denial of access to performance venues, planes, trains, and buses, should Plaintiff exercise Plaintiffs "option" and "right" to refuse to wear a mask. This is systemic, state-organized coercion of the kind ordinarily reserved to communist and other dictatorial regimes, and it vitiates voluntary consent. The Mask, the PCR Test, and the injection they (DHHS and CDC) call a "Vaccine" are not what they say they are, and the Plaintiff does not consent. Defendants' acts described herein constitute medical experimentation on non-consenting human subjects in violation of the law of nations. The customary international law prohibition against non-consensual human experimentation is expressed and defined in international treaties and declarations, international judicial decisions, and in the domestic legislation of numerous countries throughout the world, including the United States. It is widely accepted that experimentation on unknowing human subjects is morally and legally unacceptable. Even Now, Today, September 25, 2021, as

Plaintiff files this Complaint, we are still being lied to about this "pandemic". If it is a Fact that the PCR test does not test for "the virus", how can it test for "Delta", or "Mu" or any other made up strain? The simple answer is, it cannot. If the "mask" provides Zero Protection, why are these bureaucrats pushing them so hard? Corporations like OnTrac Do Not have the authority they assume they have. People need to wake up to what is really going on, it is not a Conspiracy Theory, it's a strategy. An agenda. Big Tech is censoring, Doctors are being silenced, Nurses are being fired, and this de facto administration running the federal government is the biggest disappointment in Plaintiffs lifetime.

57. Accordingly, and for all of the foregoing reasons, Plaintiff moves this Court to GRANT Plaintiffs requested relief and to permanently enjoin OnTrac from continuing their assault on Plaintiffs Rights and the Rights of others. OnTrac agents acted under color of law, OnTrac's no-exception unyielding mask policy violated Plaintiffs Rights and codified law. OnTrac is a public accommodation and Defendants are legally liable for their actions. Defendants are legally liable for everything set forth herein, and this Court should find the Defendants Guilty and award the Plaintiff the relief set forth below.

## I.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully moves the Court to GRANT the following relief:

1. Declare that OnTrac is a privately held, public accommodation and their business falls within the meaning, language and/or definitions of the ADA.

2. Declare that OnTrac is a public entity, public service, critical, essential, quasi-governmental agency, or at the very least, not a private club.

3. Declare OnTrac operates as a Host/Joint employer and "exercised control" over Plaintiffs equal enjoyment of, and participation in, the goods, services, facilities, privileges, advantages, and/or accommodations at OnTrac.

4. Declare that OnTrac violated the ADA by using a blanket no-exception policy that indefinitely barred Plaintiff from the full and equal enjoyment of, and participation in, the goods, services, facilities, privileges, advantages, and/or accommodations at OnTrac.

5. Declare that OnTrac violated CDC guidelines, Public Health Orders and Executive Directives by not allowing for exemptions, accommodations, or modifications to their policy, which directly violated Plaintiffs Rights protected by The ADA.

6. Declare that Defendants violated Plaintiffs Rights under The ADA by refusing entry of a disabled person into their facility, causing irreparable harm to Plaintiff.

7. Declare that Defendants Flores, Westfall, and Handley conspired together and barred Plaintiff from entry into their facility.

8. Declare that Defendants Flores, Westfall, and Handley conspired together and barred Plaintiff from entry into their facility, under color of law.

9. Declare that OnTrac agents unlawfully enforced no-exemption mask policies that barred protected individuals from entry, including the Plaintiff.

10. Declare that Defendant Flores' decision to bar Plaintiff from entry directly, substantially, irreparably, and financially harmed Plaintiff, and Plaintiff is entitled to Actual or General (Compensatory) Damages demanded in Complaint.

11. Declare and Order that the Court finds Defendants Flores, Westfall and Handley committed a wrongful act against Plaintiff and as such, this court can award the requested treble damages based on the intent of the Defendants.

12. Declare, Award, and Order: Plaintiff is entitled to relief in the amount of (Treble) Triple Damages of Plaintiffs Yearly Compensation, $56,000.00 dollars, amounting to $168,000.00 dollars in relief payable to Plaintiff in 30 days.

13. Declare, Award, and Order: Financial Compensation Relief and Damages for 5 years for future earnings amounting to $280,000.00 or an amount to be determined at trial.

14. Declare and Order that OnTrac is permanently enjoined from barring members of a protected class from entering their facilities from this day forward.

15. Declare, Issue and Order a Court initiated permanent injunction against OnTrac prohibiting Defendants from enforcing blanket mask policies that do not provide accommodations, modifications, and/or exemptions for protected persons.

16. Declare and Order that parent company Express Messenger Systems Inc. Executive Officers are legally liable for the unlawful actions taken by Defendants Flores, Westfall, and Handley and an Order requiring Executive Officers to financially compensate Plaintiff for the losses described herein.

17. Declare that Defendants Brad Flores, Sara Westfall, and Mary Kay Handley are individually responsible and legally liable to Plaintiff for their actions.

18. Declare that Defendants have no legal authority in the United States to force anyone not known to have a communicable disease to wear a mask.

19. Issue a Court initiated Order and permanent injunction prohibiting Defendants from creating and/or enforcing any future no-exception mask policies, and any requirement that everybody cover his/her face, unless the person is known to be infected with a communicable disease.

20. Declare, Award and Order Plaintiff the relief requested along with reasonable costs associated with filing fees, time spent litigating this matter, including receipts for costs of mailings, research, copies of documents, and the like, provided by statute.

21. Declare a Court initiated Order of declaratory and injunctive relief as may be necessary to ensure Defendants comply with the ADA, and their legal duty regarding the Health and Safety of all vendors, employers, employees, staffing agencies, contractors, RSP's, IC's, maintenance persons, drivers, dock workers, customers, etc.

22. Grant such other and further relief as the court may deem just and proper under the circumstances.

RESPECTFULLY SUBMITTED this _25TH_ of _Sept._ , 2021

Douglas Richard Moomey, Plaintiff

**Certification:** Under F.R.Civ.P. 11, by signing below I certify to the best of my knowledge information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted This _25 TH_ Day of _September_, 2021



Douglas Moomey, Plaintiff, Damaged Party
205 E 4600 S # 5
Murray, Utah [84107]
Mobile: 801-857-8124
Dmoomey@protonmail.com

Subscribed and sworn/affirmed to before me on this _25th_ day of
_September_ 20 _21_ by _Douglas Richard Moomey_

_____
Notary Public

_10/23/2023_
My Commission Expires

JONATHON COLLINS
NOTARY PUBLIC • STATE OF UTAH
COMMISSION NO. 708889
COMM. EXP. 10/23/2023

## DECLARATION IN SUPPORT OF PLAINTIFFS VERIFIED COMPLAINT

Pursuant to 28 U.S.C. § 1746, Douglas Richard Moomey, hereby declares:

I am fully competent to make this declaration and I have personal knowledge of the facts stated above. Everything stated and documented in this Complaint is true and correct to the best of my knowledge. On April 8th, 2021, I was discriminated against by Defendant Flores and told I could not return to the facility because I would not wear a mask. Defendant Flores admits He conspired with other agents at OnTrac and made a decision barring me from OnTrac property. I have standing to sue because I am the Damaged Party and my Right to operate in Commerce was affected by Defendants actions. I swear that the video of the incident is from the day in question and it provides evidence that cannot be reasonably questioned or rebutted.

I declare under Penalty of Perjury under the Laws of the United States of America that the forgoing Complaint, Documents, Articles, Letters, Exhibits, and everything in this Complaint is True, Correct, and not meant to mislead. My Word Is My Bond.

Executed this day _25TH_ of _September_ 2021

_D. Moomey_
Douglas Richard Moomey, Aggrieved, Damaged, Plaintiff
Without Recourse/All Rights Reserved

Subscribed and sworn/affirmed to before me on this 25th day of
September   2021 by Douglas Richard Moomey

_At Clis_
**Notary Public**

JONATHON COLLINS
NOTARY PUBLIC • STATE OF UTAH
COMMISSION NO. 708889
COMM. EXP. 10/23/2023

10/23/2023
**My Commission Expires**

# Certificate of Service
# Pursuant to Rule 4

I certify that a true, complete, and correct copy of this Complaint and Summons with Exhibits was sent to the below named Defendants at the below addresses.

The Defendants will receive copies of all Exhibits, EXCEPT Exhibits sent in initial Notices, as they have already received these documents by Certified Mail # 7019 1120 0001 4062 7478.

If council for OnTrac would like a copy I will provide them one.

OnTrac should give their copy to council to cut my costs.

*Lisa Bradshaw*

Lisa Bradshaw, Not a Party to this Action


United States District Court
351 S. West Temple, Salt Lake City, Utah 84101

Brad Flores
Representing OnTrac, Utah
bflores@ontrac.com
1854 South 5350 West, Salt Lake City, Utah 84104


Sara Westfall
Representing OnTrac, Arizona
swestfall@ontrac.com
2501 S. Price Rd. Suite 201, Chandler, AZ 85286