# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **DOUGLAS MOOMEY,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | |
| **v.** | |
| **EXPRESS MESSENGER SYSTEMS, INC., dba ONTRAC; ONTRAC LOGISTICS, INC.; ROBERT E. HUMPHREY, JR.; STUART L. AGRANOFF; THOMAS FISCHER; SARA WESTFALL; MARY KAY HANDLEY; ALEX VELASQUEZ; BRAD FLORES; and DOES 1-5,** | **Case No. 2:21-cv-00575-DAK-JCB** |
| **Defendants.** | **District Judge Dale A. Kimball** |
| | **Magistrate Judge Jared C. Bennett** |

District Judge Dale A. Kimball referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B).[1] Pro se Plaintiff Douglas Moomey ("Mr. Moomey") filed this action on October 1, 2021, in response to a COVID-19 facemask policy.[2] Mr. Moomey's Complaint identifies the following defendants: Express Messenger Systems, Inc. dba OnTrac; OnTrac Logistics, Inc.; Robert E. Humphrey, Jr.; Stuart L. Agranoff; Thomas Fischer; Sara Westfall; Mary Kay Handley; Alex Velasquez; and Brad Flores ("Mr. Flores") (collectively, "OnTrac"). The case is now before the court on: (1) OnTrac's Motion to Dismiss and/or for

---

[1] ECF No. 2.

[2] ECF No. 1.

Partial Summary Judgment;[3] (2) Mr. Moomey's Motion to Amend Complaint to Add Party;[4] (3) Mr. Moomey's Motion to Amend Complaint to Add Count Ten—Violation of the Rehabilitation Act;[5] and (4) Mr. Moomey's Motion for Hearing.[6] Pursuant to DUCivR 7-1(g), the court elects to determine the motions on the basis of the written memoranda and concludes that oral argument is not necessary. Therefore, Mr. Moomey's Motion for Hearing will be denied by separate order. For the reasons set forth below, the court recommends: (1) dismissing all causes of action, (2) denying both motions to amend, and (3) allowing Mr. Moomey 30 days in which to file a motion to amend his Complaint that meets the requirements of DUCivR 15-1.

## BACKGROUND

Acting as his own attorney, Mr. Moomey filed this action seeking various forms of relief based on nine causes of action. Mr. Moomey alleges that he is disabled due to respiratory ailments and being immunocompromised.[7] Among many other things, Mr. Moomey alleges that he worked for OnTrac for approximately three years through an entity called Eragon Express ("Eragon").[8] Mr. Moomey claims to have an identification badge, uniform, and a sign on his van

---

[3] ECF No. 29.

[4] ECF No. 32.

[5] ECF No. 33.

[6] ECF No. 37.

[7] ECF No. 1 at 7, 11-14. The court will cite to page numbers in the Complaint because Mr. Moomey restarts his numbered paragraphs at 1 upon pleading his causes of action. These duplicative paragraph numbers can cause confusion, so the court will use page numbers.

[8] ECF No. 1 at 6-7.

that say "OnTrac."[9] During Mr. Moomey's time working at the OnTrac facility, OnTrac enacted a mask policy in response to the COVID-19 pandemic.[10] Mr. Moomey asserts that his alleged disabilities preclude him from safely wearing a mask, which prompted him to send letters with numerous attachments to OnTrac—not Eragon—regarding the purported harm from wearing masks.[11] OnTrac never responded to Mr. Moomey's correspondence.[12]

However, on April 8, 2021, Mr. Moomey had an encounter with Mr. Flores that resulted in Mr. Moomey being told to leave the OnTrac worksite for failing to properly wear a mask.[13] During this confrontation, Mr. Flores contacted OnTrac's human resources department to determine how to deal with Mr. Moomey.[14] Mr. Moomey alleges that OnTrac dealt with him directly and did not "resolve the incident by first talking to Eragon."[15] OnTrac then allegedly barred Mr. Moomey from entering its worksite.[16] Shortly after the incident with Mr. Flores, Mr. Moomey contacted Vendor Relations at OnTrac who reaffirmed the mask policy.[17] Mr. Moomey then spoke to Eragon and was allegedly told that Mr. Flores "no longer wants you in the

---

[9] *Id.*

[10] *Id.* at 16.

[11] *Id.* at 11-12.

[12] *Id.* at 12.

[13] *Id.* at 16.

[14] *Id.*

[15] *Id.* at 17.

[16] *Id.*

[17] *Id.*

building, and I [i.e., on behalf of Eragon] can't do anything about it."[18] This Eragon

representative allegedly texted: "Erick [who works at Eragon] talked to Vendor Relations [a

department of OnTrac] and everyone said it was up to [Mr. Flores]."[19] Based on these facts, Mr.

Moomey alleges several times in his Complaint that he was "subject to OnTrac control," and,

therefore, a "Host/Joint Employer" relationship existed between Eragon and OnTrac.[20] Despite

alleging that OnTrac is a "Joint Employer" over Mr. Moomey, he also alleges that OnTrac is a

"public accommodation."[21] Mr. Moomey alleges that as a result of not being able to enter

OnTrac's workplace without a mask, he was essentially terminated from his job and, therefore,

suffered economic loss that entitles to him to backpay and the pay he would have received had he

continued to work at OnTrac.[22]

      Based on these facts, among many others, Mr. Moomey alleges nine causes of action. The

first and sixth causes of action allege a violation of Title III of the Americans with Disabilties Act

("ADA") for restricting Mr. Moomey's access to a "public accommodation," which Mr. Moomey

contends interferes with his ability to do his job at OnTrac.[23] The second cause of action alleges

that because OnTrac was doing work for the United States Postal Service, OnTrac is also subject

to Title II of the ADA, which precludes OnTrac from discriminating against people with

---

[18] *Id.* at 18.

[19] *Id.* (emphasis in original omitted).

[20] *Id.* at 18-19, 21.

[21] *Id.* at 18, 25-26, 28, 44.

[22] *Id*. at 30.

[23] *Id.*

disabilities in the provision of government services.[24] Continuing on his government-contractor theme, Mr. Moomey's third cause of action alleges a violation of 42 U.S.C. § 1983 for denying him his civil rights under the color of law.[25] Mr. Moomey then varies his government-contractor theme by alleging in his fourth cause of action that, under 42 U.S.C. § 1985, OnTrac conspired to deprive him of his civil rights.[26] Switching gears entirely, Mr. Moomey alleges that OnTrac violated section 546 of the Food, Drug, and Cosmetic Act ("FDCA")[27] in his fifth and seventh causes of action.[28] Mr. Moomey's eighth cause of action alleges intentional interference with contractual relations under state law, and his ninth cause of action asserts a claim under the Fourteenth Amendment of the United States Constitution for violating his "right to work for a living."[29]

Under Fed. R. Civ. P. 12(b)(6), OnTrac moves to dismiss all of Mr. Moomey's claims in this action.[30] As to Mr. Moomey's first and third causes of action, OnTrac contends in the alternative that it also entitled to a motion for summary judgment under Fed. R. Civ. P. 56. OnTrac asserts that Title III of the ADA does not apply to this action because OnTrac's

---

[24] *Id.* at 31-34.

[25] *Id.* at 34-36.

[26] *Id.* at 36-37.

[27] 21 U.S.C. §§ 301 to 392.

[28] ECF No. 1 at 37-38, 39-40.

[29] *Id.* at 41-42.

[30] ECF No. 29.

workplace is not a "public accommodation."[31] OnTrac also argues that Title II of the ADA does

not apply because OnTrac is not a "public entity" as defined under the statute.[32] Because OnTrac

is not a public entity, it contends that Mr. Moomey's claims under section 1983 and the

Fourteenth Amendment also fail.[33] OnTrac then asserts that Mr. Moomey's section 1985 claim

fails because a cause of action under that statute does not exist for disability discrimination.[34]

Mr. Moomey's two causes of action under the FDCA, OnTrac argues, should be dismissed

because Congress did not authorize private parties to sue thereunder.[35] Finally, OnTrac contends

that Mr. Moomey's intentional interference with contractual relations claim should be dismissed

because of insufficient pleading and because the court will lack jurisdiction over the state law

claim after dismissing all federal claims.[36]

　　　OnTrac's motion set off a blizzard of filings from Mr. Moomey. First, Mr. Moomey filed

his response to OnTrac's motion to dismiss in which he contended that all his causes of action

were sufficiently pled to withstand a motion to dismiss.[37] A short time after filing his response,

Mr. Moomey twice moved to amend his Complaint to add a new party and to add a new cause of

---

[31] ECF No. 29 at 2, 10-12.

[32] *Id.* at 13-14.

[33] *Id.* at 14-16, 18-19.

[34] *Id.* at 16-17.

[35] *Id.* at 18.

[36] *Id.* at 19-20.

[37] ECF No. 31.

action under the Rehabilitation Act.[38] However, both of Mr. Moomey's motions to amend failed

to meet the requirements of DUCivR 15-1(a)(1), which requires him to file a draft version of his

proposed amended complaint so that the court can assess the new claim's factual basis. After

filing these three items, OnTrac filed a reply in support of its motion to dismiss[39] and filed a

memorandum opposing both of Mr. Moomey's motions to amend his Complaint.[40] Mr. Moomey

then filed an improper sur-reply that responded to OnTrac's reply in support of its motion to

dismiss.[41] Finally, Mr. Moomey filed a document entitled "Judicial Notice and Memorandum of

Law" in which he directs the court to two relatively recent decisions regarding the authority of

the United States to regulate rents and face masks as part of its COVID-19 protocols.[42] The court

views Mr. Moomey's most recent submission as a Notice of Supplemental Authority under

DUCivR 7-1(c).

      After reviewing all the foregoing filings, the court concludes that it has sufficient

information to recommend a ruling on the three pending motions without oral argument.[43] As

shown below, the court recommends: (I) granting OnTrac's motion to dismiss; and (II) denying

---

[38] ECF No. 32-33.

[39] ECF No. 34.

[40] ECF No. 35.

[41] DUCivR 7-1(a)(8) precludes the filing of sur-replies without court permission. The court did not and would not have granted permission here for the filing of a sur-reply regarding the motion to dismiss. Nevertheless, the court reviewed Mr. Moomey's improper sur-reply and determines that striking it is unnecessary because it only repeats his previous arguments.

[42] ECF No. 37.

[43] DUCivR 7-1(g).

Mr. Moomey's motions to amend. The recommended disposition of both categories of motions is discussed in order below.

## ANALYSIS

### I.   THE COURT SHOULD GRANT ONTRAC'S MOTION TO DISMISS BECAUSE MR. MOOMEY FAILS TO STATE A CLAIM.

None of Mr. Moomey's nine causes of action states a claim upon which relief can be granted. When considering a motion under Rule 12(b)(6) for failure to state a claim, the court "look[s] for plausibility in th[e] complaint."[44] More specifically, the court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'"[45]

Additionally, Fed. R. Civ. P. 8 is incorporated into the court's Rule 12(b)(6) analysis.[46] Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[47] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

---

[44] *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quotations and citation omitted) (second alteration in original).

[45] *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)) (second and third alterations in original) (other quotations and citation omitted).

[46] *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010).

[47] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

suffice."[48] Rule 8 requires, at least, that the allegations of a complaint put the defendant fairly on notice of the basis for the claims against it.[49] Indeed, the twin purposes of a complaint are to give the opposing party that notice so that it may respond and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief.[50]

In analyzing Mr. Moomey's Complaint, the court is mindful that because he is proceeding pro se, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[51] However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant,"[52] and the court "will not supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded."[53] Indeed, as the United States Court of Appeals for the Tenth Circuit stated:

> The broad reading of [a pro se] plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . . [C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be

---

[48] *Id.*

[49] *Twombly*, 550 U.S. at 555.

[50] *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.* 891 F.2d 1473, 1480 (10th Cir. 1989).

[51] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003).

[52] *Bellmon*, 935 F.2d at 1110.

[53] *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam).

> granted. Moreover, in analyzing the sufficiency of the plaintiff's
> complaint, the court need accept as true only the plaintiff's
> well-pleaded factual contentions, not his conclusory allegations.[54]

After reviewing a pro se plaintiff's complaint, the court may dismiss it for failure to state a claim "only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[55]

As shown below, the court recommends dismissal of all of Mr. Moomey's causes of action. First, the court recommends dismissal of Mr. Moomey's claims under Titles II and III of the ADA (i.e., causes of action 1-2, 6) because they are precluded by Title I of the ADA. Second, the court recommends dismissal of Mr. Moomey's claims under 42 U.S.C. § 1983 and the Fourteenth Amendment (i.e., causes of action 3, 9) because there is no government action. Third, the court should dismiss his fourth cause of action under 42 U.S.C. § 1985 because disability discrimination is not cognizable under that provision. Fourth, the court should dismiss Mr. Moomey's fifth and seventh causes of action under the FDCA because Congress has not authorized a private right of action for these claims. Finally, the court should dismiss his eighth cause of action (i.e., tortious interference with contractual relations) because by dismissing Mr. Moomey's federal causes of action, there is no reason to exercise jurisdiction over his state law claim.

---

[54] *Bellmon*, 935 F.2d at 1110 (citations omitted).

[55] *Kay*, 500 F.3d at 1217 (quotations and citation omitted).

A.      **Mr. Moomey's First, Second, and Sixth Causes of Action are Precluded under Title I of the ADA.**

Because Mr. Moomey's factual allegations in his Complaint clearly allege an employer-employee relationship with OnTrac, he cannot sue under Titles II or III of the ADA. Where, as here, the court interprets a statute, its primary task is to "determine congressional intent, using traditional tools of statutory interpretation."[56] One "tool of statutory interpretation" is to begin with the statute's plain language.[57] However, when reviewing the statute's plain language, the court must not consider each statutory provision in isolation but must consider the "design of the statute as a whole."[58] The court must read the plain language as a whole to give effect to each provision that Congress enacts and to avoid rendering any provision of the statute superfluous. In fact, "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."[59] When reading the plain language of *any* statute in an effort to give effect to every word in every part of the statute, the court must not only consider what Congress said in a particular section but also what it did *not* say in that particular section. After all, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely

---

[56] *NLRB v. United Food & Com. Workers Union*, 484 U.S. 112, 123 (1987) (citation and quotations omitted).

[57] *St. Charles Inv. Co. v. Comm'r of Internal Revenue*, 232 F.3d 773, 776 (10th Cir. 2000) ("As in all cases requiring statutory construction, 'we begin with the plain language of the law.'" (quoting *United States v. Morgan*, 922 F.2d 1495, 1496 (10th Cir. 1991))).

[58] *United States v. Nichols*, 184 F.3d 1169, 1171 (10th Cir. 1999).

[59] *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quotations and citations omitted).

11

in the disparate inclusion or exclusion."[60] Thus, if Congress took the trouble to address an issue

in one section of the statute, but refused to specifically mention that problem in another section

of the statute, then the court will generally conclude that Congress did not intend to deal with

that problem in both sections in the statute.

These rules for reading statutes are critical to interpreting the ADA. As then Judge

Gorsuch observed:

> [T]he larger composition of the ADA, quickly reminds us that it
> proceeds in three distinct movements, forbidding "discrimination
> against persons with disabilities in three major areas of public life:
> employment, which is covered by Title I . . . ; public services,
> programs, and activities, which are the subject of Title II; and public
> accommodations, which are covered by Title III."[61]

"[E]ach title [of the ADA] does important and independent work . . . ."[62] As further evidence of

then Judge Gorsuch's observation, the Senate Report that preceded the ADA's enactment into law

provides: "Title III is not intended to govern any terms or conditions of employment by providers

of public accommodations or potential places of employment; employment practices are

governed by [T]itle I of this legislation."[63] Following the clear structure of the ADA and this

pithily expressed legislative intent, many courts have held that employment claims under the

---

[60] *Russello v. United States*, 464 U.S. 16, 23 (1983).

[61] *Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1309 (10th Cir. 2012) (quoting *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004)).

[62] *Id.*

[63] S.Rep. No. 101–116, at 58 (1989).

ADA must be brought under Title I *not* Title III.[64] And the United States Court of Appeals for the Tenth Circuit, among many other courts, has unequivocally held that employment claims cannot be brought under Title II of the ADA.[65] Indeed, if employment discrimination claims could also be brought under Title II or Title III of the ADA, then Title I's detailed provisions regarding employment would be rendered superfluous even though  neither Title II nor Title III even mentions "employment." This court, like so many before it, cannot read Title II and Title III of the ADA so expansively to the detriment of Title I. Therefore, Title I governs employment claims under the ADA to the exclusion of both Title II and Title III.

The allegations in Mr. Moomey's Complaint attempt to plead an employment claim, which precludes him from relying on Title II and Title III in his first, second, and sixth causes of action. The allegations in Mr. Moomey's Complaint clearly state that he works for Eragon.[66] However, he never alleges that he is an independent contractor.[67] Instead, the Complaint's factual allegations show that he interacts directly with OnTrac for purposes of discussing the mask policy and how it affects him. The Complaint also alleges that OnTrac exercises control over Mr.

---

[64] *See, e.g.*, *Menkowitz v. Pottstown Memorial Med. Ctr.*, 154 F.3d 113, 118-19 (3d Cir. 1998) (stating that "Congress did not intend Title III—despite the breadth of its language—to govern discrimination within the employment setting and we cannot construe Title III in a manner that would eviscerate such a salient legislative mandate"); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) (holding that Title III of the ADA does not apply to employment).

[65] *Elwell*, 693 F.3d at 1306-10 (extensively explaining why Title I and not Title II of the ADA governs employment discrimination).

[66] ECF No. 1 at 6-7.

[67] Independent contractors cannot claim to be "employees" under Title I of the ADA. *See, e.g.*, *Birchem v. Knights of Columbus*, 116 F.3d 310, 312 (8th Cir. 1997) ("Like Title VII, the ADA protects 'employees' but not independent contractors.").

Moomey's ability to work even though OnTrac is not his direct employer. Mr. Moomey specifically alleges several times that OnTrac is a "Joint Employer" with Eragon.[68] Consequently, Mr. Moomey seeks a declaration that OnTrac "operates as a Host/Joint Employer and 'exercised control over [his]" job and also seeks "Triple Damages of [his] Yearly Compensation" in addition to "future earnings."[69] These allegations are clearly seeking to plead an employment claim.

In further support of the court's reading of Mr. Moomey's Complaint, the court refers to the Tenth Circuit's decision in *Bristol v. Board of County Commissioners of Clear Creek*.[70] In *Bristol*, a deputy sheriff was terminated from his employment based on his heart condition that precluded him from being able to perform his job as a confinement officer in the county jail.[71] The plaintiff left the county's employ and two-years later filed suit against the county commission and the sheriff for terminating his employment based on his disability.[72] The district court judge decided that both the sheriff and the county commission were the plaintiff's employers,[73] but the Tenth Circuit remanded the case to the district court to apply the proper test to determine whether the county commission was indeed the plaintiff's employer.[74] The plaintiff

---

[68] ECF No. 1 at 18-19, 21, 45.

[69] *Id.* at 45-46.

[70] 312 F.3d 1213 (10th Cir. 2002) (en banc).

[71] *Id.* at 1215.

[72] *Id.* at 1216.

[73] *Id.*

[74] *Id.*

sought rehearing en banc, which the Tenth Circuit allowed.[75] The *Bristol* en banc opinion begins by recognizing that a court construing an employment claim under Title I of the ADA must consider whether the plaintiff is an "employee," or an "independent contractor."[76] The en banc court then recognized that even an independent contractor can be an "employee" under Title I of the ADA based on the court's "hybrid test."[77] However, the court recognized that the hybrid test "does not provide an appropriate framework in the present situation, where *there is no allegation that Bristol is an independent contractor of the Board*."[78] Because the plaintiff did not allege that he was an independent contractor of the county commission, the court found that two other tests were better suited to determine whether the plaintiff was an employee. One of these two tests is the "joint-employer test,"[79] which Mr. Moomey alleges in his Complaint. The joint-employer test seeks to determine whether two distinct entities "share or co-determine those matters governing the essential terms and conditions of employment. In other words, courts look to whether both entities exercise significant control over the same employees."[80] The *Bristol* court found the "joint-employer test" to be squarely within the realm of Title I's employment provisions under the ADA.[81]

---

[75] *Id.*

[76] *Id.* at 1217.

[77] *Id.*

[78] *Id.* at 1218 (emphasis added).

[79] *Id.*

[80] *Id.* (quotations and citations omitted).

[81] *Id.* at 1217.

This "joint-employer test" is precisely what Mr. Moomey alleges in his Complaint. Beyond simply writing the relevant words in his Complaint, Mr. Moomey provides factual allegations that clearly attempt to plead a joint-employer theory between him and OnTrac. And, as shown above, this theory of liability must be addressed, if at all, exclusively through Title I of the ADA. Indeed, if Title II and Title III covered employment claims, then there would have been no need for Congress to enact Title I because it would be utterly superfluous. Mr. Moomey's attempt to bring his employment claims under either Title II or Title III is improper considering that neither title even refers to employment. Thus, because Mr. Moomey's Complaint pleads an employment action against OnTrac as a joint employer under Title I, he cannot state a claim for relief under Title II or Title III.[82] Accordingly, Mr. Moomey's first, second, and sixth causes of action should be dismissed for failure to state claim upon which relief can be granted.[83]

### B.   Mr. Moomey's Section 1983 and Fourteenth Amendment Claims Fail as Matter of Law for Want of Government Action.

Mr. Moomey's section 1983 and Fourteenth Amendment claims fail as a matter of law because they fail to show that OnTrac was a state actor. Mr. Moomey's claim under the Fourteenth Amendment is cognizable only through 42 U.S.C. § 1983.[84] Accordingly, the court

---

[82] *Elwell*, 693 F.3d at 1305.

[83] Although the court finds that Mr. Moomey has attempted to plead an employment claim under Title I, the court is not finding that Mr. Moomey has actually done so. The court has simply determined that the allegations in Mr. Moomey's current Complaint are about employment and, therefore, cannot support a Title II or Title III cause of action.

[84] *See, e.g., Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 2002) ("[A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983."); *Hoogerhuis v. Birnbaum*, 545 F. Supp. 3d 1065, 1071-72 (D.N.M. 2021) ("Section 1983 is the exclusive vehicle for vindication of substantive rights under the U.S. Constitution.").

must address Mr. Moomey's Fourteenth Amendment claim as a claim under section 1983.

Section 1983 imposes civil liability upon "any person" who, acting under color of state law, deprives another of their federally protected rights.[85] Section 1983 does not confer any substantive rights but merely serves as a vehicle for vindicating rights secured by the United States Constitution or federal statutes.[86] To state a claim under section 1983, Mr. Moomey must allege a deprivation of a federally protected right and that this "deprivation was committed by a person acting under color of *state* law."[87] "The traditional definition of acting under color of *state* law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of *state* law and made possible only because the wrongdoer is clothed with the authority of *state* law.'"[88] The term "state law" means just that because section 1983 cannot be used to hold accountable those acting under *federal* law.[89]

Mr. Moomey's section 1983 action is based exclusively on OnTrac's purported enforcement of "CDC guidelines."[90] The Centers for Disease Control and Prevention (i.e., the CDC) is a *federal* agency within the United States Department of Health and Human Services.[91]

---

[85] 42 U.S.C. § 1983.

[86] *Maher v. Gagne*, 448 U.S. 122, 129 n.11 (1980).

[87] *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added).

[88] *Id.* (emphasis added).

[89] *Campbell v. Amax Coal Co.*, 610 F.2d 701, 702 (10th Cir. 1979) ("In addition, we note that appellants' complaint fails to state a claim under § 1983, which statute does not apply to federal officers acting under color of federal law.").

[90] ECF No. 1 at 35.

[91] Preventive Health Amendments of 1992, Pub. L. No. 102-534, § 312, 106 Stat. 3469 (1992).

Hence, it is not an arm of any state. Moreover, nothing in Mr. Moomey's Complaint alleges that

OnTrac either "enforced" state law or was empowered by any state to be an enforcement arm of

state government. Mr. Moomey asserts in his sur-reply that OnTrac worked for the State of

Utah,[92] but those allegations are nowhere to be found in the Complaint, which precludes the

court from considering them.[93] Consequently, Mr. Moomey's third and ninth causes of action fail

to state a claim for relief as a matter of law.[94]

### C.   Mr. Moomey's Section 1985 Claim Fails as a Matter of Law.

Mr. Moomey's fourth cause of action invokes 42 U.S.C. § 1985 to attempt pleading a

conspiracy to deprive him of rights based on disability. However, a conspiracy to discriminate

based on disability is not a cognizable legal claim under section 1985.[95] Therefore, Mr.

Moomey's fourth cause of action should be dismissed for failure to state a claim for relief.

---

[92] ECF No. 36 at 5-6.

[93] *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir.1995) (holding that a court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984) (holding that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").

[94] Similarly, even if the court considered Mr. Moomey's Fourteenth Amendment claim separately, it fails for the same reason: no state action. When analyzing a Fourteenth Amendment claim, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Because Mr. Moomey has failed to plead any state action, much less any authorization from the State of Utah to enforce the law on its behalf, he could not plead a claim under the Fourteenth Amendment. Mr. Moomey appears to concede this argument. ECF No. 31 at 16.

[95] *Wilhelm v. Continental Title, Co.*, 720 F.2d 1173, 1177 (10th Cir. 1983) ("We must conclude that a class of 'handicapped persons' was not in the contemplation of Congress in 1871, and was not included as a class in what is now § 1985(3).").

**D.** **Mr. Moomey's Claims Based on the FDCA Should be Dismissed Because Congress Did Not Authorize Private Rights of Action.**

In response to OnTrac's motion to dismiss Mr. Moomey's claims under the FDCA, Mr. Moomey states: "Companies can be held liable for violating federal law. If they [i.e., companies] can't be held liable[,] then why do we even write these laws[?]"[96] The particular law about which Mr. Moomey poses this question is 21 U.S.C. § 360bbb-3. Section 330bbb-3 authorizes the Secretary of the Department of Health and Human Services to introduce "into interstate commerce . . . a drug, device, or biological product intended for use in an actual or potential emergency" after the Secretary declares that an emergency exists.[97] The remainder of the statute specifies the procedures the Secretary must follow when carrying out these emergency powers.

To answer Mr. Moomey's question, Congress has the power to both write the laws and to determine who gets to enforce them. Indeed, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress."[98]

> The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.[99]

---

[96] ECF No. 31 at 12.

[97] 21 U.S.C. § 360bbb-3(a).

[98] *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

[99] *Id.* at 286-87 (quotations and citations omitted).

To determine whether Congress intended for private parties to enforce the FDCA, the court considers the plain language of the statute.[100] And where Congress has specifically stated "one method of enforcing a substantive rule," it "suggests that Congress intended to preclude others."[101]

Congress has not created a private right of action to enforce section 360bbb-3. For starters, neither section 360bbb-3 nor any other provision of the FDCA empowers any private party with the ability to sue another private party for allegedly violating the statute. Conversely, other provisions of the FDCA vest enforcement authority "by and in the name of the United States."[102] In other words, Congress has authorized only the United States to enforce the provisions of the FDCA; it has not allowed private parties to do so.[103] Because Congress did not mention creating a private right of action in the FDCA and committed its enforcement (including section 330bbb-3) to the United States government, Mr. Moomey cannot state a claim for relief. Therefore, Mr. Moomey's fifth and seventh causes of action should be dismissed.

---

[100] *Id.* at 289.

[101] *Id.* at 290.

[102] 21 U.S.C. § 337(a).

[103] *Littlefield v. Gilead Scis. Inc.*, No. 21-CV-055-CVE-JFJ, 2021 WL 698855, *2 (N.D. Okla. Feb. 23, 2021) ("Plaintiffs cite the [FDCA] and claim that defendants violated this act, but this act does not create a private right of action that would allow plaintiffs to sue defendants for alleged violations of the act.").

**E.     Mr. Moomey's Eighth Cause of Action Should Be Dismissed Because After Dismissing All of His Federal Claims, This Court Should Decline to Hear His Sole State-Law Claim.**

Because this court should dismiss all of Mr. Moomey's federal claims, it should decline to hear Mr. Moomey's lone state-law claim. Mr. Moomey's Eighth cause of action raises a claim of intentional interference with contractual or economic relations under Utah law.[104] "Pursuant to 28 U.S.C. § 1367(a), federal courts may exercise supplemental jurisdiction over claims outside their original jurisdiction if those claims are part of the same Article III case or controversy as claims over which the court has original jurisdiction."[105] However, "[u]nder 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction. When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[106] The court has concluded that all of Mr. Moomey's federal claims fail. Because Mr. Moomey's remaining claim is based upon Utah law, the court should decline to exercise supplemental jurisdiction over that claim. Instead, the court should allow Mr. Moomey to pursue it before a state tribunal.

---

[104] ECF No. 1 at 41-42. Although Mr. Moomey's Complaint refers to a Massachusetts court decision and even though his response to OnTrac's motion to dismiss inexplicably contends that his eighth cause of action is based on "a tort claim under the commerce clause," the court liberally reads his eighth cause of action to allege a claim for tortious interference with contractual or economic relations under Utah law. The court does not opine on whether Mr. Moomey's Complaint contains sufficient factual allegations to survive a motion to dismiss.

[105] *Brock v. Herbert*, No. 2:09-CV-1118, 2012 WL 1029355, at *2 (D. Utah Mar. 26, 2012).

[106] *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quotations and citations omitted).

As explained, the court recommends that OnTrac's motion to dismiss should be granted on all the federal causes of action in Mr. Moomey's Complaint. However, because the court ultimately recommends that Mr. Moomey be given the opportunity to file a new motion to amend complaint, if Mr. Moomey does so and states a viable federal cause of action, then the court could exercise supplemental jurisdiction over his eighth cause of action.

## II.   THE COURT SHOULD DENY MR. MOOMEY'S MOTIONS TO AMEND THE COMPLAINT BUT GIVE HIM THE OPPORTUNITY TO FILE A PROPER MOTION TO AMEND.

Although Mr. Moomey's two motions to amend his Complaint[107] should be denied for failure to comply with DUCivR 15-1, he should be allowed to move to amend anew if he can plead facts that can state claims for relief. Dismissal with prejudice for failure to state a claim can occur "only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[108] To assist the court in determining whether amendment would be futile, DUCivR 15-1(a)-(b) requires a pro se plaintiff seeking to amend a complaint to attach "the proposed amended pleading" as an exhibit to the motion. Because the "futility" standard under Fed. R. Civ. P. 15 encompasses the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6),[109] the court must be able to review the new factual allegations in a proposed amended complaint to determine whether they meet the standards of Fed. R. Civ. P. 8 and 12(b)(6).

---

[107] ECF Nos. 32, 33.

[108] *Kay*, 500 F.3d at 1217 (quotations and citation omitted).

[109] *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.").

The court cannot make that determination here regarding his claim under the Rehabilitation Act[110] because Mr. Moomey failed to attach a copy of his proposed amended complaint. Therefore, the court should deny his motions to amend, but give him 30 days to file a new motion to amend that includes as an exhibit a proposed amended complaint that is consistent with the legal principles and rules set forth herein. Giving Mr. Moomey the opportunity to file a motion to amend his Complaint is especially warranted where, as here, Mr. Moomey is appearing pro se.[111] If Mr. Moomey chooses to file a proper motion to amend with a proposed amended complaint, OnTrac can oppose the renewed motion to amend based on futility or other grounds, and the court will be able to assess the viability of the amended claims.

## CONCLUSION AND RECOMMENDATION

As stated above, the undersigned HEREBY RECOMMENDS that the district court GRANT OnTrac's motion (ECF No. 29) and dismiss all nine of Mr. Moomey's causes of action without prejudice, DENY Mr. Moomey's two motions to amend his Complaint (ECF Nos. 32, 33), but give Mr. Moomey 30 days from the district court's ruling to refile a motion to amend his Complaint that complies with DUCivR 15-1.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.[112] The parties must file any objection to this Report and

---

[110] 29 U.S.C. § 701 *et seq.*

[111] *Washington v. Dewey*, No. 3:17-CV-1316, 2019 WL 1921939, at *1 (D. Conn. Apr. 30, 2019) ("A pro se plaintiff's motion to amend should be considered with even greater leniency because 'a pro se litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'" (quoting *Satchell v. Dillworth*, 745 F.2d 781, 785 (2d Cir. 1984))).

[112] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

Recommendation within fourteen days after being served with a copy of it.[113] Failure to object

may constitute waiver of objections upon subsequent review.

       DATED this 9th day of May 2022.

                           BY THE COURT:

                           _____

                           JARED C. BENNETT
                           United States Magistrate Judge

---

[113] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).