IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| **DOUGLAS MOOMEY,**<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>**EXPRESS MESSENGER SYSTEMS, INC., dba ONTRAC; ONTRAC LOGISTICS, INC.; ROBERT E. HUMPHREY, JR.; STUART L. AGRANOFF; THOMAS FISCHER; SARA WESTFALL; MARY KAY HANDLEY; ALEX VELASQUEZ; BRAD FLORES; and DOES 1-5,**<br><br>　　　　　　　Defendants. | **REPORT AND RECOMMENDATION**<br><br><br><br>Case No. 2:21-cv-00575-DAK-JCB<br><br><br><br>**District Judge Dale A. Kimball**<br><br>**Magistrate Judge Jared C. Bennett** |

District Judge Dale A. Kimball referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B).[1] Before the court is pro se Plaintiff Douglas Moomey's ("Mr. Moomey") Motion to Amend Original Complaint.[2] The court has carefully reviewed the parties' written submissions. Under DUCivR 7-1(g), the court elects to determine the motion on the written memoranda and concludes that oral argument is not necessary. As shown below, the undersigned recommends denying Mr. Moomey's motion to amend and dismissing this action with prejudice.

---

[1] ECF No. 2.

[2] ECF No. 41.

## BACKGROUND

On October 1, 2021, Mr. Moomey filed the original complaint in this action. The factual allegations from the original complaint were summarized in the May 9, 2022 Report and Recommendation and need not be repeated here.[3] Relevant for purposes of this motion, Mr. Moomey alleges that he worked for OnTrac Logistics ("OnTrac") for approximately three years through an entity called Eragon Express ("Eragon"). While working with the OnTrac facility, OnTrac enacted a mask policy in response to the COVID-19 pandemic. Mr. Moomey claims that his alleged disabilities preclude him from safely wearing a mask. In the spring of 2021, Mr. Moomey had an encounter with Brad Flores ("Mr. Flores"), the manager of the OnTrac facility, that resulted in Mr. Moomey being told to leave the OnTrac worksite for failing to properly wear a mask. Mr. Moomey claims that because he was precluded from entering OnTrac's workplace without a mask, he was essentially terminated from his job.[4]

Mr. Moomey's original complaint set forth nine causes of action, which all stem from OnTrac's COVID-19 mask policy.[5] The complaint names as defendants: Express Messenger Systems, Inc. dba OnTrac; OnTrac Logistics, Inc.; Robert E. Humphrey, Jr.; Stuart L. Agranoff; Thomas Fischer; Sara Westfall; Mary Kay Handley; Alex Velasquez; and Mr. Flores (collectively, "OnTrac").

---

[3] ECF No. 39 at 2-4.

[4] *Id.*

[5] ECF No. 1.

On February 15, 2022, OnTrac moved to dismiss Mr. Moomey's complaint in its entirety.[6] OnTrac argued that the complaint was subject to dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[7]

On May 9, 2022, the undersigned issued a Report and Recommendation addressing OnTrac's Rule 12(b)(6) motion. The Report and Recommendation thoroughly examined each of the nine causes of action in the complaint and concluded: "None of Mr. Moomey's nine causes of action states a claim upon which relief can be granted."[8] Accordingly, the undersigned recommended that the court: (1) grant OnTrac's motion and dismiss all nine causes of action in the complaint without prejudice; (2) deny Mr. Moomey's two pending motions to amend the complaint based on his failure to comply with the applicable rules; and (3) give Mr. Moomey 30 days to file a new motion to amend the complaint that conforms with the court's rules and the legal principles set forth in the Report and Recommendation.[9]

On June 1, 2022, having received no objection to the May 9, 2022 Report and Recommendation, District Judge Dale A. Kimball adopted and affirmed the Report and Recommendation as the order of the court.[10] By doing so, the court dismissed all nine causes of action in the complaint without prejudice, denied Mr. Moomey's two pending motions to amend,

---

[6] ECF No. 29.

[7] *Id.* at 2.

[8] ECF No. 39 at 8.

[9] ECF No. 39.

[10] ECF No. 43 at 2.

and provided Mr. Moomey with thirty days to re-file a motion to amend that complies with DUCivR 15-1 and the Report and Recommendation.[11]

On June 7, 2022, the court received Mr. Moomey's untimely objection to the May 9, 2022 Report and Recommendation.[12] Mr. Moomey represented to the court that on May 18, 2022, he mailed a timely objection. Mr. Moomey was uncertain as to why the objection did not arrive in a timely manner and suggested that it must have been lost in the mail. Under the circumstances, the court agreed to consider Mr. Moomey's untimely objection.

Upon receiving the objection, the court conducted a *de novo* review of the motions that were addressed in the Report and Recommendation and Mr. Moomey's objection. On June 16, 2022, the court entered an order overruling Mr. Moomey's objection and readopting and reaffirming the Report and Recommendation as the order of the court.[13]

In the meantime, on May 19, 2022, Mr. Moomey filed the motion that is now before the court seeking leave to file an amended complaint.[14] Contrary to DUCivR 15-1 and the court's instruction in the May 9, 2022 Report and Recommendation, Mr. Moomey did not attach a fully drafted amended complaint to his motion. Instead, the Proposed Amended Pleading ("proposed Amended Complaint") that Mr. Moomey attached as an exhibit consisted of a few allegations for a new cause of action under Title I of the Americans with Disabilities Act ("ADA"),[15] and

---

[11] *Id.*

[12] ECF No. 44 (filed on June 7, 2022 and docketed on June 9, 2022).

[13] ECF No. 45.

[14] ECF No. 41.

[15] ECF No. 41-1.

merely stated that he was incorporating the prior complaint that the court had previously dismissed. However, writing the words "hereby incorporated" did not magically insert all the allegations and claims from the old complaint into the new complaint. And, as a result, the proposed Amended Complaint that was attached as an exhibit did not include all the allegations and claims Plaintiff intended. Contrary to the court's instruction, Mr. Moomey failed to provide the court with a complete proposed Amended Complaint that the court could review to "determine whether [it] meet[s] the standards of Fed. R. Civ. P. 8 and 12(b)(6)."[16] Nevertheless, even if the court considers his new allegations in conjunction with the allegations in the previously dismissed complaint, his motion to amend the complaint fails, and the court recommends dismissal of this action with prejudice.

## ANALYSIS

Mr. Moomey's motion for leave to file an amended complaint is governed by Fed. R. Civ. P. 15(a)(2), which provides that "[t]he court should freely give leave" to amend pleadings "when justice so requires."[17] Whether to provide a party leave to amend a pleading "is within the discretion of the trial court."[18] "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.[19] "A

---

[16] ECF No. 39 at 22.

[17] Fed. R. Civ. P. 15(a)(2).

[18] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quotations and citation omitted).

[19] *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quotations and citation omitted).

proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[20] "Thus, in evaluating a proposed amendment for futility, the court must apply the same standard it would apply in evaluating a Rule 12(b)(6) motion to dismiss the proposed amended complaint."[21]

As the court explained in the May 9, 2022 Report and Recommendation, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim that is plausible on its face."[22] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[23] The court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'"[24]

Additionally, Fed. R. Civ. P. 8 is incorporated into the court's Rule 12(b)(6) analysis.[25] Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing

---

[20] *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quotations and citation omitted).

[21] *Golden v. Mentor Capital, Inc.*, No. 2:15-cv-176-JNP, 2015 WL 13631247, at *1 (D. Utah Sept. 29, 2015) (citing *Bradley*, 379 F.3d at 901).

[22] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[23] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[24] *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555-56) (second and third alterations in original) (other quotations and citations omitted).

[25] *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010).

that the pleader is entitled to relief." "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[26] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[27] At a minimum, Rule 8 requires that a complaint give the opposing party notice so that it may respond and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief.[28]

As shown below, Mr. Moomey's proposed Amended Complaint fails to meet these pleading requirements. First, the court considers (or addresses anew) causes of action one through nine and, like it held before, finds that they fail to state a claim. The court will then consider the new, tenth cause of action, brought under Title I of the ADA, as set forth in the proposed Amended Complaint. Because none of the causes of action in the patchwork complaint state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), the court recommends that the motion to amend be denied.

1. Causes of Action 1 through 9

As a procedural matter, although Mr. Moomey may have intended to re-pursue the original complaint it its entirety, neither the factual allegations nor the nine claims in the original

---

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[27] *Id.*

[28] *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1989).

complaint were set forth in the proposed Amended Complaint. In the May 9, 2022 Report and Recommendation, the court explained that the reason for requiring plaintiffs to attach a proposed amended complaint to any motion to amend is to allow the court to review the proposed document to determine whether it meets the standards of Rules 8 and 12(b)(6).[29] Here, instead of providing the court with a pleading that includes all of the factual allegations and causes of action in a single document for the court's review, the proposed Amended Complaint purports to "incorporate[ ] by reference the allegations, exhibits, and pictures contained in the Original Verified Complaint as if fully set forth [therein]."[30] However, "[the] amended complaint must stand on its own and may not incorporate by reference any facts or claims from earlier pleadings."[31] Additionally, the complaint Mr. Moomey now seeks to incorporate has already been dismissed by this court.[32] Thus, the proposed Amended Complaint fails on that basis alone.

Moreover, even if the court were to construe the proposed Amended Complaint as though it properly included all of Mr. Moomey's allegations and the nine causes of action from the original complaint, pursuing them would be futile. Causes of action 1 through 9 are the identical

---

[29] ECF No. 39 at 22 (citing DUCivR 15-1(a)-(b)).

[30] ECF No. 41-1 at 1.

[31] *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992); *Gardner v. Long,* No. 2:18-cv-509, 2020 WL 10057890, at *2 (D. Utah Oct. 19, 2020) ("An amended complaint must stand on its own and may not incorporate by reference any facts or claims from earlier pleadings.") *report and recommendation adopted by* 2020 WL 7252950 (D. Utah Nov. 23, 2020); *see also Muhammad v. Bethel-Muhammad*, No. 11-0690, 2012 WL 1854315, at *3 (S.D. Ala. 2012) (finding that plaintiff's attempt to incorporate his original complaint into his amended complaint was "legally impermissible" because Fed. R. Civ. P. 10(c) "allows 'statements' to be adopted, not 'pleadings'").

[32] ECF Nos. 43, 45.

causes of action this court previously considered and dismissed for failure to state a claim under Rule 12(b)(6). The limited additional facts and allegations set forth in the proposed Amended Complaint do nothing alter the court's original analysis regarding these causes of action. Therefore, allowing Mr. Moomey to pursue causes of action 1 through 9, again, would be futile for the same reasons set forth in detail in the May 9, 2022 Report and Recommendation, adopted by this court on June 1, 2022, and readopted on June 16, 2022.[33]

2. Tenth Cause of Action Under Title I of the ADA

The proposed Amended Complaint sets forth a new and single cause of action (the tenth cause of action) under Title I of the ADA.[34] To state a claim under Title I of the ADA, a plaintiff

---

[33] Even if this court considers Mr. Moomey's previously dismissed Title III public accommodation argument under the ADA as an alternative request for relief, his Title III claim fails. Mr. Moomey concedes in his proposed Amended Complaint that he is an independent contractor. ECF No. 41-1 at 3. Some courts have found that independent contractors may state a claim for relief under the public accommodation provisions of ADA's Title III. *See, e.g., Menkowitz v. Pottstown Memorial Med. Ctr.*, 154 F.3d 113, 122 (3d Cir. 1998) ("We therefore hold that a medical doctor with staff privileges—one who is not an employee for purposes of Title I—may assert a cause of action under Title III of the ADA as an 'individual' who is denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."). However, for Title III's protections to apply in Mr. Moomey's situation, he must show that OnTrac's shipping facility is a place of "public accommodation." To establish this requirement, Mr. Moomey must show that OnTrac's shipping facility: (1) is a facility; (2) operated by a private entity; (3) whose operations affect commerce; and (4) fall within at least one of twelve categories listed in 28 C.F.R. § 36.104's definition of "place of public accommodation." *See, e.g.,* 28 C.F.R. §36.104; *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 533 (5th Cir. 2016) (finding that vending machines at hospital did not fall within one of the twelve categories in section 36.104's definition of "place of public accommodation" and, therefore, was not covered under Title III of the ADA). Even if the court assumes without deciding that OnTrac's shipping facility is a facility operated by a private entity whose operations affect commerce, that facility is not akin to *any* of the twelve categories in the above-cited regulation. Therefore, OnTrac's shipping facility is not a "place of public accommodation," and Mr. Moomey's Title III claims fail again.

[34] ECF No. 41-1 at 3.

such as Mr. Moomey must sufficiently allege an employee-employer relationship with the defendant.[35] The United States Court of Appeals for the Tenth Circuit uses three different tests to determine whether a defendant is an "employer" for ADA purposes.[36] These tests include: (1) the hybrid test; (2) the joint employer test; and (3) the single employer test.[37] Which of the three tests apply in any given case depends on the circumstances.[38]

In *Knitter v. Corvias Military Living, LLC*, the Tenth Circuit reviewed the three tests, noted the slightly different objectives of each, and explained the circumstances in which the different tests apply.[39] Starting with "the hybrid test," the Tenth Circuit explained that the "hybrid test" is commonly used "to distinguish an employee from an independent contractor."[40] This distinction matters because, as the court noted in the May 9, 2022 Report and

---

[35] *See Bristol v. Bd. of Cty. Commr's*, 312 F.3d 1213, 1217 (10th Cir. 2002); *see also Knitter v. Corvias Military Living, LLC,* 758 F.3d 1214, 1225 (10th Cir. 2014) (providing that if plaintiff cannot satisfy her burden to show defendant was her employer, her claims under Title VII necessarily fail). Because the ADA defines employer in the same way Title VII defines the term, "the Tenth Circuit frequently applies Title VII cases to similar terms and phrases in cases brought under the ADA, and vice versa." *Crumpley v. AWG Wholesale Grocers, Inc.*, 16-cv-2298, 2016 WL 6610876, at *2 n.2 (D. Kan. Nov. 8, 2016); *see, e.g., Bristol,* 312 F.3d at 1217-18 (noting that Title VII and the ADA define "employee" identically and relying on Title VII case law in its articulation of various employment tests to determine whether an entity was an employer under the ADA); *see also, e.g., Knitter*, 758 F3d at 1225 n.8 (noting that ADA cases considering whether an entity is an employer are instructive in the Title VII setting).

[36] *Knitter,* 758 F.3d at 1225-26 ("[The Tenth Circuit] chooses among three different tests to determine whether a defendant is an employer depending on the situation.").

[37] *Knitter,* 758 F.3d at 1225-26.

[38] *Id.*

[39] 758 F.3d at 1226-27.

[40] *Id.* at 1226.

10

Recommendation, Title I of the ADA "protects 'employees' but not independent contractors."[41] The hybrid test combines two types of inquiry: "(1) a common law inquiry asking whether an entity controls its workers in an employer-employee relationship, and (2) the 'economic realities test,' which asks whether the worker is in business for himself 'as a matter of economic fact.'"[42] The "main focus," however, "is the employer's right to control the 'means and manner' of the worker's performance."[43] The hybrid test includes no fewer than 11 factors to consider, and courts are instructed to "look at the totality of the circumstances surrounding the working relationship between the parties."[44]

The "joint employer test" is the appropriate test when an employee of one entity seeks to hold another entity liable as an employer.[45] Under the joint employer test, "two entities are considered joint employers if they 'share or co-determine those matters governing the essential terms and conditions of employment.'"[46] To hold an entity liable it must exercise significant

---

[41] *Birchem v. Knights of Columbus*, 116 F.3d 310, 312 (8th Cir. 1997); *see also* ECF No. 39 at 13 n.67 ("Independent contractors cannot claim to be 'employees' under Title I of the ADA.").

[42] *Id.* (quoting *Oestman v. Nat'l Farmers Union Ins. Co.*, 958 F.2d 303, 305 (10th Cir. 1992)).

[43] *Id.* (quoting *Oestman*, 958 F.2d at 305). The *Knitter* court also explained that although the court "later began using the hybrid test also to determine which of two entities was a plaintiff's employer under Title VII," the *en banc* decision in *Bristol* clarified that the "joint employer test, not the hybrid test, is the appropriate test to use when an employee of one entity seeks to hold another entity liable as an employer." *Id.* at 1226 (citing *Bristol,* 312 F.3d at 1218).

[44] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 980 (10th Cir. 2002) (providing that the main focus of the hybrid test is the employer's right to control the "means and manner" of the worker's performance and listing 11 additional factors to consider) (citations and quotations omitted)).

[45] *Knitter,* 758 F.3d at 1226.

[46] *Id.* (quoting *Bristol,* 312 F.3d at 1218).

control over the terms and conditions of a worker's employment.[47] To decide whether a defendant exercises significant control over a worker's employment, the court considers several factors:

> (1) The right to terminate employment, (2) the ability to promulgate work rules and assignments, (3) day-to-day supervision of employees, including employee discipline, (4) control over compensation, benefits, and hours, and (5) control of employee records, including payroll, insurance, taxes and the like.[48]

The most important factor, however, is the right to terminate employment.[49]

The "single employer test" applies when the employee of one entity seeks to hold another entity liable by arguing that the two entities effectively constitute a single employer.[50] "Courts employing the single employer test generally weigh four factors: (1) the interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control."[51]

In this case, regardless of whether the court construes the proposed Amended Complaint as being limited to the factual allegations expressly set forth therein or whether the court construes the proposed Amended Complaint as incorporating the allegations from the original complaint, it fails to allege facts which, if true, could support a plausible claim under Title I of

---

[47] *Id.*

[48] *Crumpley v. AWG Wholesale Grocers, Inc.*, No. 16-cv-2298, 2016 WL 6610876, at *2 (D. Kan. Nov. 8, 2016) (citations and quotations omitted).

[49] *Knitter*, 758 F.3d at 1226.

[50] *Id.* at 1227.

[51] *Bristol,* 312 F.3d at 1220.

the ADA. More specifically, Mr. Moomey's allegations are insufficient to support a plausible claim that OnTrac was Mr. Moomey's employer under any of the foregoing tests.

The allegations expressly set forth in the proposed Amended Complaint are relatively succinct. Mr. Moomey states he was an independent contractor.[52] According to Mr. Moomey, he was "hired by Eragon to work as an independent contractor doing a route for OnTrac, using OnTrac freight, dealing with OnTrac customers, and Eragon was, is, merely an employment agency."[53] He alleges that "[t]he contractual agreements between OnTrac and Eragon are clear, OnTrac must go through Eragon for any related request or demands of the independent contractor."[54] As Mr. Moomey puts it: "This agreement[ ] keeps everyone on their square."[55] Mr. Moomey further alleges, however, that his status as independent contractor ended, and OnTrac became his employer, "the second [Mr. Flores] . . . demanded [he] wear a mask."[56] According to Mr. Moomey, "[o]nce Mr. Flores . . . directly commanded [me] to do something, an employer/employee relationship was established."[57]

These allegations are insufficient to allege a plausible employer-employee relationship between Mr. Moomey and OnTrac. The allegation that "OnTrac must go through Eragon for any related request or demands of the independent contractor . . . . to keep[ ] everyone on their

---

[52] ECF No. 41-1 at 3.

[53] Id.

[54] Id.

[55] Id.

[56] Id.

[57] Id. at 4.

13

square,"[58] suggests that OnTrac had little direct control over Mr. Moomey. And, aside from Mr. Moomey's statements that he used OnTrac freight and dealt with OnTrac customers, the only alleged basis for finding an employer-employee relationship is OnTrac's demand that Mr. Moomey wear a mask.[59] Given the numerous factors the Tenth Circuit has identified as informing whether a defendant is an employer for purposes of the ADA, Mr. Moomey's conclusory statement – that he ceased to be an independent contractor due to OnTrac's demand for compliance with its COVID facemask policy – is woefully insufficient to support a plausible claim under Title I of the ADA. This is especially so given that many courts have determined that requiring independent contractors to comply with facility safety rules and requirements does not create an employment relationship for Title VII purposes.[60]

Moreover, even if the court were to construe the proposed Amended Complaint as incorporating the allegations from the original complaint, it would still be subject to dismissal under Rule 12(b)(6). In the original complaint, Mr. Moomey does not claim to be an independent contractor. Instead, he states that he works for Eragon and Eragon is the entity responsible for

---

[58] *Id.* at 3.

[59] *Id.* at 4.

[60] *See, e.g., Perry v. Pediatric Inpatient Critical Care Servs., P.A.*, No. SA-18-CV-404-XR, 2020 WL 1248263, at *19 (W.D. Tex. Mar. 16, 2020) ("Requiring all workers to comply with general policies and procedures governing quality, safety, and compliance with regulatory standards does not create an employment relationship [for Title VII purposes]."); *Banks v. St. Francis Health Center Inc.*, No. 15-cv-2602-JAR, 2016 WL 6905581, at *15 (D. Kan. Nov. 21, 2016) (providing that hospital-promulgated workplace safety rules that contractor's employees were required to follow did not create an employer relationship for purposes of Title VII between the contractor's employees and the hospital).

paying him,[61] and that he "has worked for OnTrac for approximately 3 years."[62] Thereafter, many of the "allegations" consist of legal conclusions or conclusory statements. For example, Mr. Moomey alleges several times that OnTrac is a "Joint Employer" with Eragon.[63] Although the court must consider factual allegations as true for purposes of deciding a motion to dismiss, conclusory statements like this do not suffice. [64] Moreover, despite identifying the "joint employer test,"[65] the original complaint fails to set forth facts that would tend to show that Eragon and OnTrac share or co-determine those matters governing the essential terms and conditions of employment. Instead, Mr. Moomey alleges, in conclusory fashion, that he was "subject to OnTrac control" and therefore a "Host/Joint Employer relationship existed between Eragon and OnTrac."[66] The original complaint does allege facts tending to show that Mr. Moomey interacted directly with OnTrac for purposes of discussing the mask policy and how it affects him, however, it fails to allege facts tending to show other relevant aspects of the relationship between the parties. Thus, even if the court were to incorporate all of the allegations from the original complaint, the proposed Amended Complaint would still lack "sufficient factual matter" to "state a claim that is plausible on its face."[67] In sum, granting Mr. Moomey

---

[61] ECF No. 1 at 6-7.

[62] *Id.*

[63] ECF No. 1 at 18-19, 21, 45.

[64] *Iqbal*, 556 U.S. at 678.

[65] *See, e.g.,* ECF No. 1 at 20.

[66] ECF No. 1 at 18-19, 21-21; ECF No. 1-16 at 16 of 19.

[67] *Twombly*, 550 U.S. at 570.

leave to assert his tenth cause of action in the proposed Amended Complaint is futile because alleging a violation of Title I of the ADA, would be subject to dismissal for failure to state a claim upon which relief can be granted. After careful review of the proposed Amended Complaint, the undersigned is unable to discern any claim upon which relief could be granted. Accordingly, giving Mr. Moomey leave to file the proposed Amended Complaint would be futile, and, thus, Mr. Moomey's motion to amend should be denied.[68]

Having recommended that the motion to amend should be denied, the court further recommends that this action be dismissed in its entirety with prejudice. In making this recommendation, the court is mindful that "[d]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[69] The court provided Mr. Moomey with an opportunity to amend the complaint. That opportunity proved futile.

Even more to the point, in the "supplemental information" section of the proposed Amended Complaint, Mr. Moomey indicates that prior to filing the original complaint he was aware of the Tenth Circuit's decision in *Bristol*, in addition to other cases, that explained the

---

[68] If the court considers Mr. Moomey's previously dismissed complaint anew, the court would again dismiss Mr. Moomey's eighth cause of action alleging intentional interference with contractual and economic relations under Utah law because it is a state cause of action in a case over which this court no longer has before it any federal questions or diverse parties. Therefore, the court should decline to exercise jurisdiction over this lone state-law cause of action. *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction. When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (quotations and citations omitted)).

[69] *Kay*, 500 F.3d at 1217 (quotations and citation omitted).

relevant tests for finding an employer-employee relationship for purposes of Title I of the ADA.[70] And, to the extent Mr. Moomey was not sufficiently aware *prior* to filing the original complaint, the May 9, 2022 Report and Recommendation discussed *Bristol*, identified many of the factors relevant to finding an employer-employee relationship, and provided Mr. Moomey the opportunity to file a new motion to amend. Despite this information and opportunity, the proposed Amended Complaint still failed to state a claim under Rule 12(b)(6). Under these circumstances, the undersigned finds that providing yet another opportunity to amend would be futile. Therefore, the undersigned recommends that the motion for leave to amend be denied on the basis that it is futile and further recommends that this case dismissed in its entirety with prejudice.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Mr. Moomey's motion for leave to amend the complaint be DENIED and that this action be DISMISSED WITH PREJUDICE.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.[71] The parties must file any objection to this Report and

---

[70] ECF No. 41-1 at 2 ("Plaintiff asked EEOC for a right to sue letter and filed this Complaint. EEOC staff contended they were very busy, but they were the ones who initially brought up the Bristol case."); *see also* ECF No. 1-16 at 16 of 19.

[71] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

Recommendation within fourteen days after being served with a copy of it.[72] Failure to object may constitute waiver of objections upon subsequent review.

DATED July 22, 2022.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[72] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).